UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

CARLA CHILDS, as Special Administrator )
of the Estate of Ethel Kirk, and on behalf )
of Herself and Others Similarly Situated, )
)
              Plaintiffs, )
)
v. )   Case No. 10-CV-23-TCK-PJC
)
UNIFIED LIFE INSURANCE COMPANY, and )
STERLING HEALTH SERVICES, LLC., )
)
              Defendants. )

**OPINION AND ORDER**

Before the Court are Defendant Unified Life Insurance Company's ("Unified") Motion to Dismiss (Doc. 11) ("Motion to Dismiss") and Plaintiff's Opposed Motion for Leave to File an Amended Complaint (Doc. 62) ("Motion for Leave").

**I.    Background**

The following facts are alleged in Plaintiff's Class Action Complaint ("Complaint").[1] Plaintiff is the daughter of Ethel Levina Kirk ("Kirk"), who resided in Broken Arrow Nursing Home before she died on May 30, 2009. During her stay at the nursing home, Kirk was eligible for and received Medicaid assistance from the State of Oklahoma. Accordingly, Plaintiff alleges that Kirk, "an elderly lady in need of dentures," was "entitled to receive denture-related services as provided by Medicaid, at no charge to her personal funds." (Compl. ¶ 25.) However, on an unknown date, but before May 1, 2007, Kirk applied for and purchased a dental insurance policy ("Dental Plan")

---

[1] These facts are also alleged in Plaintiff's proposed First Amended Class Action Complaint ("First Amended Complaint").

1

from Unified, presumably to cover denture-related expenses. Kirk was invoiced for the Dental Plan on a monthly basis. Acting on behalf of Kirk, Plaintiff would pay the Dental Plan premium out of Kirk's checking account. The Dental Plan was not purchased by Broken Arrow Nursing Home on Kirk's behalf. Nor were the Dental Plan premiums paid by Broken Arrow Nursing Home out of its daily rate for routine services.

Plaintiff, as Special Administrator of Kirk's estate and on behalf of all others similarly situated,[2] now brings this class action suit against Unified, claiming the Dental Plan is contrary to Oklahoma law and therefore void.[3] Specifically, Plaintiff maintains that the Dental Plan violates Okla. Admin. Code § 317:30-5-133.1 ("Section 317:30-5-133.1") because: (1) "the Dental Plan is not purchased by Oklahoma nursing facilities to benefit their individual Medicaid residents," but is instead marketed and sold directly to Medicaid residents or their representatives, (Compl. ¶ 21); (2) "Dental Plan premiums are not collected . . . from any nursing facility's 'daily rate for routine services' [but are] instead [c]ollected from Medicare (sic) residents' personal funds" or by money

---

[2] Plaintiff's claims are asserted on behalf of the following proposed class of individuals:

Citizens or residents of Oklahoma:

i) residing or that have resided in Oklahoma nursing facilities;
ii) receiving or that have received Medicaid assistance, via SoonerCare or otherwise, from the State of Oklahoma;
iii) that are eligible, or that have been eligible, to receive denture-related services under [Okla. Admin. Code] §§ 317:30-5-133.1(b)(17); and
iv) that purchased, or have purchased, and out of their own funds, pay or have paid, monthly premiums for the Dental Plan.

(*Id.* ¶ 21 ("Proposed Class").)

[3] Plaintiff initially named Sterling Health Services, LLC as a defendant in addition to Unified. However, Plaintiff subsequently voluntarily dismissed Sterling from suit. (*See* Pl.'s Stipulation of Dismissal of Def. Sterling Health Servs.)

2

held in trust for the benefit of the residents, (*id*. ¶ 22); and (3) the Dental Plan "contains numerous per-procedure benefit caps and co-payments relating to both participating and non-participating dentists," (*id.* ¶ 23). Plaintiff also alleges that the denture-related services offered by the Dental Plan were "virtually identical to the denture-related 'routine-services'" already provided by Medicaid at no charge to nursing facility residents. (*Id.* ¶ 19.)

In conjunction with these allegations, Plaintiff asserts three causes of action against Unified. First, Plaintiff brings a claim for "unjust enrichment/restitution," claiming that the Dental Plan constitutes an illegal contract, and Unified has therefore wrongfully retained the monthly premiums paid by Kirk and the Proposed Class. (*Id.* ¶¶ 38-44.) Second, Plaintiff alleges that Unified, by accepting and not returning the illegally obtained premiums, has committed a claim for conversion. (*See id.* ¶ 46.) Finally, Plaintiff brings a claim under the Oklahoma Consumer Protection Act ("OCPA"), maintaining that Unified engaged in an "unfair trade practice" by "selling to [Kirk] and members of the Class the Dental insurance contract, which is illegal and thus 'offends established public policy.'" (*Id.* ¶ 51.)

Unified has moved to dismiss the Complaint, claiming that it fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").[4] Specifically, Unified argues that Plaintiff's Complaint should be dismissed because: (1) Plaintiff's claims are based on the Oklahoma Health Care Authority's ("OHCA") regulations, which do not provide a private cause of action; (2) Plaintiff received the counterperformance specified by the

---

[4] Unified's Motion to Dismiss also seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). However, the parties now agree that this argument is moot "by Plaintiff dismissing Defendant Sterling Health Services, LLC." (Joint Status Report at 3.) The Court will therefore only address Unified's Rule 12(b)(6) argument.

Dental Plan, prohibiting a claim for unjust enrichment; (3) Plaintiff's claim for conversion seeks to recover money rather than tangible personal property; and (4) Plaintiff's action is exempt from the OCPA. Plaintiff objects to Unified's Motion to Dismiss and further seeks leave to file an Amended Complaint in order to: (1) add MobileCare 2U, LLC ("MobileCare") as a defendant;[5] (2) eliminate all references in the Complaint to Sterling; and (3) adjust the nature of the conversion claim, "making it [i]n the nature of a 'Thing in Action,'" (Mot. for Leave 2-3). In objecting to Plaintiff's Motion for Leave, Unified rests on the arguments advanced in its Motion to Dismiss, maintaining that the proposed amendments to the Complaint are futile because the First Amended Complaint does not remedy the deficiencies identified in the Motion to Dismiss.

## II.     Motion to Dismiss

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 550 U.S. at 570). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.

---

[5] Plaintiff contends MobileCare was involved in the marketing of the Dental Plan, coordinated the provision of dental services to Dental Plan insureds, and was paid part of the monthly premiums collected as compensation for its services. (*See* Mot. for Leave 3.)

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. In addition, the Tenth Circuit has stated that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context," and that whether a defendant receives fair notice "depends on the type of case." *Id.*

### A. Unjust Enrichment Claim

Unjust enrichment is a "recognized ground for recovery in Oklahoma" and "describes a condition resulting from the failure of a party to make restitution in circumstances where it is inequitable." *Lapkin v. Garland Bloodworth, Inc.*, 23 P.3d 958, 961 (Okla. Civ. App. 2000) (internal citations omitted). "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." *Id.* In order to demonstrate a claim for unjust enrichment, the plaintiff must prove "enrichment to another coupled with a resulting injustice." *Teel v. Pub. Serv. Co. of Okla.*, 767 P.2d 391, 398 (Okla.1985). Unified argues

that Plaintiff's unjust enrichment claim fails because (1) it is based on OHCA regulations, which do not provide a private cause of action, and (2) Plaintiff received the counterperformance specified by the Dental Plan.

1. Private Right of Action under OHCA regulations

Unified maintains that because Plaintiff's unjust enrichment claim is essentially based on violation of the OHCA regulations, it is necessary to determine whether such regulations imply a private right of action pursuant to the factors enumerated in *Holbert v. Echeverria*, 744 P.2d 960 (Okla. 1987). In *Holbert*, the Oklahoma Supreme Court adopted a three-prong test for determining whether a state regulatory statute implies a private right of action. This test, known as the "*Holbert* test," consists of the following three prongs: (1) the plaintiff must belong to that class for whose "especial" benefit the statute was enacted and the class must be narrower than the "public at large"; (2) the statute must either explicitly or implicitly give some indication the legislature intended to create a private remedy; and (3) the private remedy must not be inconsistent with the underlying purposes of the legislative scheme. *See Walker v. Chouteau Lime Co., Inc.*, 849 P.2d 1085, 1086-87 (Okla. 1993) (citing *Holbert*, 744 P.2d 960). Unified argues that when applied to this case, the *Holbert* test demonstrates that there is no private right of action included within the OHCA regulations.

The Court finds the *Holbert* test inapplicable to the case at hand. A review of the cases cited by Unified in its Motion to Dismiss demonstrates that the *Holbert* test is applied to causes of action based on statutory or regulatory non-compliance. *See Holbert*, 744 P.2d 960 (alleging explicit claim for violation of the OCPA and analyzing whether OCPA implied a private right of action to support such a claim); *Walker*, 849 P.2d at 1086-87 (applying *Holbert* analysis to claim for violation of the

6

Unfair Claim Settlement Practices Act); *Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212, 1228-29 (W.D. Okla. 2008) (applying *Holbert* analysis to claims for violations of OCPA and Oklahoma Deceptive Trade Practices Act). Notably, these cases did *not* involve contracts rendered illegal because of a particular statute or regulation in question.

In contrast, Plaintiff is not bringing an explicit claim for violation of Section 317:30-5-133.1, but is rather asserting an unjust enrichment claim based on the position that the Dental Plan is illegal pursuant to Section 317:30-5-133.1 and therefore void as a matter of law. (*See* Pl.'s Resp. to Def.'s Mot. to Dismiss 9-10 ("In contrast, the regulation at issue here . . . is merely the mechanism for determining the Unified dental plan to be illegal and void.")). Plaintiff's unjust enrichment claim, although involving Section 317:30-5-133.1, is not brought pursuant to Section 317:30-5-133.1, but is instead brought under general contract and equity principles. *See* Okla. Stat. tit. 15, § 211 ("Those contracts are illegal which are: 1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited; or, 3. Otherwise contrary to good morals."); *Birdwell v. Tri-State Ins. Co.*, 286 P.2d 736, 740 (Okla. 1955) ("[A]n insurance contract which has the effect of furthering any matter or thing prohibited by statute, falls within the same rule as contracts generally and is therefore void."); *Lapkin.*, 23 P.3d at 961 ("This court has held that an express contract between parties does not preclude recission and a finding of unjust enrichment where equity demands such a result.") (finding "equity requir[ed] the return of [attorney] fees" obtained under a settlement agreement after settlement agreement was declared void). Thus, based on the nature of Plaintiff's cause of action, the Court finds *Holbert* inapplicable and holds that determination of whether the OHCA regulations imply a private right of action is unnecessary in this case.

2. Counterperformance

Second, Unified argues that even assuming the Dental Plan is illegal for violating Section 317:30-5-133.1, Plaintiff cannot bring a claim for unjust enrichment when "Plaintiff and the proposed class members received the counterperformance specified by the parties' allegedly unenforceable agreement." (Def.'s Reply in Support of Mot. to Dismiss 2.) In support of this position, Unified cites *Van Zanen v. Qwest Wireless, L.L.C.*, 522 F.3d 1127 (10th Cir. 2008), and Restatement (Third) of Restitution and Unjust Enrichment § 32(2) (Tentative Draft No. 3, 2004).

In *Van Zanen*, plaintiffs filed a class action, claiming that Qwest Wireless had been unjustly enriched by selling cell phone handset insurance in violation of an Arizona insurance licensing statute and seeking recovery of the insurance premiums paid to Qwest. The Tenth Circuit affirmed the district court's holding that plaintiffs could not state a claim for unjust enrichment against Qwest based on Qwest's counterperformance. Specifically, applying Colorado law regarding unjust enrichment, the Tenth Circuit predicted that the Colorado Supreme Court would hold that even if an agreement is illegal or otherwise enforceable, there can be no unjust enrichment if the claimant receives the counterperformance specified by the parties unenforceable agreement. *See Van Zanen*, 522 F.3d at 1132. In so holding, the court noted that this was the view of the "substantial" majority of courts, *id.*, as well as the Restatement (Third) of Restitution and Unjust Enrichment § 32(2), tentatively approved by the membership of the American Law Institute. *See* Restatement (Third) of Restitution and Unjust Enrichment § 32(2) (Tentative Draft No. 3, 2004) ("There is no unjust enrichment if the claimant receives the counterperformance specified by the parties' unenforceable agreement."). Unified points to *Van Zanen* as support for its position that because Plaintiff and the

Proposed Class received insurance coverage from the Dental Plan, they are unable to bring a claim for unjust enrichment.

The parties have not cited, nor has this Court found, any case in which an Oklahoma court has directly addressed whether counterperformance of an allegedly unlawful contract bars an unjust enrichment claim based on such contract. This Court, like the court in *Van Zanen*, must therefore predict how the Oklahoma Supreme Court would rule. *See Lampkin v. Little*, 286 F.3d 1206, 1212 (10th Cir. 2002) (stating the court's task was "to predict how [the Oklahoma Supreme Court] would rule" given the absence of Oklahoma precedent). The Court agrees with Unified that it is likely that the Supreme Court of Oklahoma would follow the position adopted by the Tenth Circuit in *Van Zanen*. First, Oklahoma and Colorado share virtually identical requisites for a claim of unjust enrichment. Stated in general terms, both states require an expense to plaintiff, a benefit to defendant, and a resulting injustice. *See Van Zanen*, 522 F.3d at 1130 ("Under Colorado law, to establish a claim of unjust enrichment a plaintiff must show that (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying.") (internal quotations omitted); *Teel*, 767 P.2d at 398 (stating that in order to demonstrate a claim for unjust enrichment under Oklahoma law, the plaintiff must prove "enrichment to another coupled with a resulting injustice"); *Lapkin*, 23 P.3d at 961 (noting that under Oklahoma law, the basis of an unjust enrichment claim is that "in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another"). Second, like Colorado courts, Oklahoma courts have cited to previous versions of the Restatement of Restitution, indicating a likelihood that the tentative draft of Restatement (Third) of Restitution and Unjust Enrichment § 32(2) would similarly be cited with

9

approval by Oklahoma courts. *See, e.g., Miller v. Miller*, 956 P.2d 887, 905 n.70 (Okla. 1998) (citing Restatement of Restitution § 72); *Stites v. DUIT Const. Co., Inc.*, 903 P.2d 293, 301 n.28 (Okla. 1995) (citing Restatement of Restitution § 1); *Warren v. Century Bankcorporation, Inc.*, 741 P.2d 846, 852, n.18, n. 20, n. 21, n. 27 (Okla. 1987) (citing multiple sections of Restatement of Restitution); *see also Van Zanen*, 522 F.3d at 1132 (predicting that Colorado would follow tentative draft of Restatement of Restitution and Unjust Enrichment given that "Colorado courts have repeatedly relied on the previous version of the Restatement of Restitution"). Finally, as noted by the Tenth Circuit in *Van Zanen*, its holding parallels the "majority view," *see Van Zanen*, 522 F.3d at 1131-32 (citing cases), and the Court is without any reason to believe that Oklahoma would elect to "swim against this tide," *id.* at 1132.

However, although the Court agrees with Unified that *Van Zanen* and the majority position would likely be followed by the Oklahoma Supreme Court, Unified's analysis of the counterperformance issue is incomplete. Unified fails to note that inherent in *Van Zanen* is the notion that the counterperformance be valuable to the plaintiff, such that plaintiff did not suffer any unjust detriment. For example, in *Van Zanen*, the Tenth Circuit stated that "[t]he clear import of the [district court] decision is not that the Van Zanens failed to incur an expense; rather, it is that the Van Zanens received *value for their money* and that in the absence of any unfair detriment, there is no injustice to prevent." *Van Zanen*, 522 F.3d at 1130 (emphasis added); *see id.* at 1129 (discussing the district court's finding that the Van Zanens "obtained a *valuable product* for which they bargained and which they intend to keep" and therefore did not suffer any "detriment, expense, or impoverishment") (emphasis added) (internal quotations and citations omitted); *see Van Zanen v. Qwest Wireless, L.L.C.*, 550 F. Supp. 2d 1261 (D. Colo. 2007) (noting that the Van Zanens were

10

"*satisfied* with their purchase of the policy" and that the Van Zanens alleged that "they would not have obtained this *salutary product* but for Qwest's efforts") (emphasis added). Further, in affirming the district court, the court found that the Van Zanens' unjust enrichment claim was barred because "[i]f the Van Zanens were allowed to recover the fees that they paid Qwest, they would, as the district court noted, be allowed to retain a *benefit* without paying for it." *Id.* at 1131 (emphasis added).

Further, in prohibiting the Van Zanens' unjust enrichment claim, the Tenth Circuit explicitly distinguished cases cited by the Van Zanens on the basis that, in such cases, "the purchaser seeking restitution had not received or retained any benefit from the service or product." *Id.* at 1132 (distinguishing, *inter alia*, *Kansas City Cmty. Ctr. v. Heritage Indus., Inc.*, 972 F.2d 185, 189-90 (8th Cir. 1992) (finding plaintiff was entitled to restitution, despite the fact that defendant architect completed design plans, because plaintiff did not obtain any benefit from defendant's architectural plans when plaintiff did not use the plans and paid for the creation of new plans) and *Wineman v. Blueprint 100, Inc.* 348 N.Y.S.2d 721, 723 (N.Y. City Civ. Ct. 1973) (finding defendant was entitled to restitution of retainer fee from plaintiff architect when architect was not licensed, as required by New York law, and, although architect performed his part of the contract, defendant "did not use the work product" of architect)); *see Griffin v. Capital Sec. of Am.*, --- P.3d ----, 2010 WL 4361378, at *13 (Colo. App. 2010) (finding restitution award proper despite fact that defendant "fully performed" because plaintiff "did not realize the full benefit of the transaction") (distinguishing *Comet Theatre Enter., Inc. v. Cartwright*, 195 F.2d 80, 82 (9th Cir. 1952) (restitution denied when there was "no proof that the [counterperformance] [was] defective or that [claimant] did not receive value for the money which he paid")). In distinguishing such cases, the Tenth Circuit implied that

11

the effect of counterperformance on an unjust enrichment claim depends on whether the person seeking restitution received benefit from the counterperformance.

Indeed, the Court finds this conclusion to comport with the general principles behind an unjust enrichment claim under Oklahoma law. Specifically, as stated above, unjust enrichment "is essentially equitable," and is based on the notion that "in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." *Lapkin*, 23 P.3d at 961. Barring an unjust enrichment claim due to the mere existence of counterperformance, when that counterperformance did not result in any benefit to plaintiff (and in fact might have resulted in detriment to plaintiff), would fly in the face of the equitable principles behind an unjust enrichment claim. Rather, when counterperformance does not benefit a plaintiff, the principles of equity point to permitting a claim for unjust enrichment since, in such a situation, the plaintiff's ability to demonstrate detriment is not negated by the act of counterperformance. In addition to furthering the underlying principles of unjust enrichment, this finding also takes into account that "equity eschews mechanical rules," "requires courts to exercise flexibility," and requires courts to "assess all relevant facts and circumstances and tailor appropriate relief on a case by case basis." *McNeely v. Nat'l Mobile Health Care, L.L.C.*, No. CIV-07-933-M, 2008 WL 2944933, at *2, *6 (W.D. Okla. July 25, 2008) (applying Oklahoma law) (internal quotations and citations omitted) (denying summary judgment as to unjust enrichment claim based on plaintiff's assertion that contract for dental insurance was void despite defendant's argument that plaintiff received benefit from insurance policy).[6]

---

[6] The Court further finds this conclusion consistent with a statement in *Warren v. Century Bankcorporation, Inc.*, 742 P.2d 846 (Okla. 1987), as cited by Unified. Therein, the Oklahoma Supreme Court stated that "[t]he inequity of retaining a benefit can spring from a

Applying this finding to the instant case, the Court looks to the allegations of Plaintiff's Complaint. Therein, Plaintiff alleges that "[t]his class action confronts a scheme hatched by [Unified] to illegally bilk thousands of aged Oklahoma nursing home residents receiving Medicaid assistance out of their personal funds, under the guise of providing them dental insurance." (Compl. ¶ 8.) Plaintiff further alleges that the denture-related services offered by the Dental Plan were "virtually identical to the denture-related 'routine-services' Medicaid already provides Oklahoma nursing facility residents at no charge to them." (*Id.* ¶ 19; *see* Pl.'s Sur-Reply to Def.'s Reply to Pl.'s Resp. to 12(b)(6) Mot. to Dismiss 3-5 (arguing plaintiff and proposed class members did not need private denture insurance).) Because Plaintiff's allegations indicate that the Dental Plan was redundant and unnecessary for Kirk and the Proposed Class, and because, at this stage, the Court must assume Plaintiff's allegations to be true, *see Robbins*, 519 F.3d at 1247, the Court is unwilling to dismiss the unjust enrichment claim on the basis of Unified's counterperformance.

**B.    Conversion Claim**

"Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Welty v. Martinaire of Okla., Inc.*, 867 P.2d 1273, 1275 (Okla. 1994) (internal citations omitted); *see also Shebester v. Triple Crown Insurers*, 826 P.2d 603, 608 (Okla. 1992) ("Conversion is an illegal taking of another's personalty inconsistent with his

---

variety of sources, such as fraud or other unconscionable conduct in which the recipient has received a benefit for which he has not responded with a quid pro quo." *Id.* at 852.  Unified argues that this statement evidences an acknowledgment to the "counterperformance exception to the law of unjust enrichment." (Def.'s Reply in Support of Mot. to Dismiss 7.)  While the Court agrees with Unified's contention, the language of *Warren* also evidences the notion that in order to avoid an inequitable result, the recipient of a benefit must provide the other party with a benefit as well.  *See* Blacks Law Dictionary (defining "quid pro quo" as a thing of "more or less equal value").

13

ownership rights."). "The general rule in Oklahoma is that only *tangible* personal property may be converted." *Welty*, 867 P.2d at 1275 (internal citations omitted) (emphasis in original). When a plaintiff seeks to recover money, there is no conversion. *See Shebester*, 826 P.2d at 608 (finding no common-law conversion claim when claimant sought to recover money, which under Oklahoma law, "is considered intangible personal property"); *AG Equip. Co. v. AIG Life Ins. Co., Inc.*, No. 07-CV-0556-CVE-PJC, 2008 WL 4570319, at *5 (N.D. Okla. Oct. 10, 2008) (dismissing claim for conversion because conversion claim was based on allegation that defendant wrongfully retained money paid by plaintiff) ("[B]ecause [plaintiff] is seeking to recover money only, the Court finds that [plaintiff] has not stated a claim for conversion under Oklahoma law."); *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1279 (N.D. Okla. 2006) (applying Oklahoma law) ("Generally, only tangible personal property may be converted, such that conversion will not lie where the seller has the right to recover money, which is considered to be intangible personal property.") (internal citations omitted).

In this case, Unified argues that because Plaintiff's conversion claim seeks to recover money, it must be dismissed.[7] Indeed, review of the Complaint demonstrates that, as argued by Unified, Plaintif is seeking to recover money only. (*See* Compl. ¶¶ 46-48 (alleging conversion of funds paid to cover insurance premiums).) The Court therefore finds that the conversion claim, as alleged in the Complaint, is subject to dismissal for failure to state a claim.[8] However, as outlined below, *see*

---

[7] Unified also argues that the conversion claim should be dismissed because there is no private right of action under the OHCA regulations. As previously discussed, *see supra* Section II.A.1, the Court rejects this argument.

[8] Plaintiff argues that "[s]everal Supreme Court of Oklahoma cases leave open the possibility of an action for conversion of money." (Pl.'s Sur-Reply to Def.'s Reply to Pl.'s Resp. to 12(b)(6) Mot. to Dismiss 9 (citing *Beshara v. S. Nat'l Bank*, 928 P.2d 280, 289-90 (Okla.

14

*infra* Section III, Plaintiff's proposed amendments to the conversion claim save this claim from dismissal.

        **C.**        **Oklahoma Consumer Protection Act Claim**

Unified argues that Plaintiff's OCPA claim should be dismissed because the OCPA exempts from its coverage: "Actions or transactions regulated under laws administered by the Corporation Commission or any other regulatory body or officer acting under statutory authority of this state of the United States . . . ." Okla. Stat. tit. 15, § 754(2) ("Section 754(2)"). Unified argues that under this exclusion from coverage, Plaintiff's OCPA claim should be dismissed because it involves transactions regulated by the Oklahoma Insurance Commissioner.

The Court agrees with Unified and finds that Plaintiff's action falls within the exemption outlined in Section 754(2). Plaintiff's OCPA claim alleges that Unified engaged in an unfair trade practice by selling the Dental Plan to Plaintiff and the Proposed Class. (*See* Compl. ¶ 51.) This transaction – namely, the sale of the Dental Plan – is clearly regulated by the Oklahoma Insurance Code and the Insurance Commissioner. *See* Okla. Const. Art. 6, § 22 (establishing Insurance Department, and stating that department is "charged with the execution of all laws now in force, or which shall hereafter be passed, in relation to insurance and insurance companies doing business in the state"); Okla. Stat. tit. 36, § 307 (stating that Insurance Commissioner "shall have jurisdiction over all complaints against all persons engaged in the business of insurance"); Okla. Stat. tit. 36, §

---

1996); *Brown v. Okla. State Bank & Trust Co.*, 860 P.2d 230, 232 n.1 (Okla. 1993); *Steenbergen v. First Fed. Sav. & Loan*, 753 P.2d 1330 (Okla. 1987)).) However, as noted by Plaintiff, "[t]hese cases, admittedly, involve banking relationships and identified sums of money held in bank accounts." (Pl.'s Sur-Reply to Def.'s Reply to Pl.'s Resp. to 12(b)(6) Mot. to Dismiss 9.) Plaintiff offers no authority supporting the extension of these cases to facts not involving "banking relationships." The Court is therefore unwilling to extend the reach of these cases to the instant matter given the clear case law outlined above.

632 ("Unless otherwise provided for by law or exempted by the provisions of this section, any person or other entity which provides coverage in this state for . . . dental expenses, whether coverage is by direct payment, reimbursement, or other means, shall be presumed to be subject to the jurisdiction of the Insurance Commissioner unless the person or other entity shows that while providing coverage the person or entity is subject to the jurisdiction of another agency of this or another state, any subdivision of this state, or the federal government . . . ."); Okla. Stat. tit. 36, § 1205 ("The Commissioner shall have power to examine and investigate into the affairs of every person engaged in the business of insurance in this state in order to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by Section 1203 of this article."); *Thomas*, 540 F. Supp. 2d at 1228-29 (finding OCPA claim against insurance company was barred due to the "broad enforcement and regulatory powers provided to the Oklahoma Insurance Commissioner to regulate the kinds of acts alleged as wrongful in this action").

The Court is unpersuaded by Plaintiff's argument that because the "illegality of an insurance policy . . . does not appear to be one of the 'unfair methods of competition and unfair or deceptive acts or practices' regulated by the Oklahoma Insurance Commissioner," the exception of Section 754(2) does not apply. (*See* Pl.'s Resp. to Def.'s Mot. to Dismiss 15.) First, Plaintiff's argument is made without any supporting case law. Second, it ignores the general principle that the Insurance Commissioner regulates the sale of insurance policies, which is the transaction at the core of Plaintiff's OCPA claim. Although there are not many cases construing Section 754(2), those cases treating this exception suggest that when the OCPA claim involves an insurer's activity in the business of insurance, the exception applies. *See Thomas*, 540 F. Supp. 2d at 1228-29; *Conatzer v.*

16

*Am. Mercury Insur. Co., Inc.*, 15 P.3d 1252, 1255 (Okla. Civ. App. 2000) (permitting OCPA claim against insurer, despite exception of Section 754(2), when claim concerned insurance company's resale of car and did not concern insurance company's activities in business of insurance) ("[T]he Insurance Code provides for regulation and oversight of an insurer's activity in the business of insurance. In this instance, although the activity of reselling cars upon which claims have been paid may be a regular part of [defendant's] activities, it certainly is not an inherent part of the business of insurance."). In this case, Plaintiff's OCPA claim concerns Unified's sale of the Dental Plan, which clearly constitutes "activity in the business of insurance." *Conatzer*, 15 P.3d at 1255. The Court therefore finds dismissal of Plaintiff's OCPA claim proper.

### III. Motion to Amend

Plaintiff seeks to amend the Complaint in order to: (1) add MobileCare as a defendant; (2) eliminate all references in the Complaint to Sterling; and (3) adjust the nature of the conversion claim, "making it [i]n the nature of a 'Thing in Action,'" (Mot. for Leave 2-3). In objecting to Plaintiff's Motion to Amend, Unified relies on the arguments advanced in its Motion to Dismiss, contending that the amendments are futile because they do not save the claims from dismissal. (Def.'s Resp. to Pl.'s Opposed Mot. for Leave to File Am. Compl. 4 ("Plaintiff's proposed amendments add no viability to the claims set forth in her original complaint, all of which are subject to Unified's pending Motion to Dismiss.").) Unified therefore argues that "the proper action is for the [C]ourt to deny the proposed amendments because they are necessarily subject to dismissal as a result of Unified's [Motion to Dismiss], and are therefore indisputably futile." (*Id.*)

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a court should "freely give leave [to amend] when justice so requires." District courts generally deny leave to amend only on a "showing

of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City and Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (internal quotation omitted); *see Corporate Stock Transfer, Inc. v. AE Biofuels, Inc.*, 663 F. Supp. 2d 1056, 1061 (D. Colo. 2009) (noting that the non-moving party bears the burden of showing that the proposed amendment is sought in bad faith, that it is futile, or that it would cause substantial prejudice, undue delay or injustice). When futility of amendment is at issue, as in the instant case, a court may deny a motion for leave to amend "if the proposed amendment would not withstand a motion to dismiss or if it fails to state a claim upon which relief may be granted." *Collins v. Wal-Mart, Inc.*, 245 F.R.D. 503, 507 (D. Kan. 2007) (internal citations omitted). "In order to determine whether a proposed amendment is futile, the court must analyze the proposed amendment as if it were before the court on a motion to dismiss pursuant to [Rule 12(b)(6)]." *Id.* (internal citations omitted).

Therefore, because the standard under which the Court assesses the futility of Plaintiff's Motion to Amend overlaps with the 12(b)(6) standard, the Court incorporates its 12(b)(6) analysis outlined above. *See supra* Section II. Based on the Court's findings therein, any amendments affecting Plaintiff's unjust enrichment claim are not futile, as that claim is not subject to dismissal and the proposed amendments do nothing to change the nature of that claim. However, the Court does find the proposed amendments futile as to Plaintiff's OCPA claim. As detailed above, the Court finds dismissal of this claim proper pursuant to the exception outlined in Section 754(2), and the proposed amendments do nothing to save this claim from such a result.

The conversion claim requires a more detailed analysis due to the fact that Plaintiff's proposed amendments make explicit changes to this claim. Specifically, Plaintiff wishes to change

18

the conversion claim so that it is now alleges a claim of "Conversion/Thing in Action as Per 60 Okla. St. § 312." (*See* Proposed First Am. Class Action Compl., Ex. A to Pl.'s Mot. to Amend, at 15) (alleging that "[w]ithout limitation, [the void nature of the Dental Plan and the fact that Unified retained premiums from the Dental Plan] entitles Plaintiffs to assert an action for conversion or a Thing in Action as per 60 Okla. St. § 312.").) In support of this amendment, Plaintiff cites *Brown v. Oklahoma State Bank & Trust Company of Vinita*, 860 P.2d 230 (Okla. 1993), and Okla. Stat. tit. 60, § 312 (stating "[a] thing in action is a right to recover money or other personal property, by judicial proceedings), as cited in *Brown*. Specifically, in *Brown*, the Oklahoma Supreme Court stated as follows:

> The common rule in Oklahoma is that only tangible personal property may be converted. When a person has a right to recover money, a chose in action exists. This is the action to bring for intangible personal property such as money. *Shebester v. Triple Crown Insurers*, 826 P.2d 603, 608 (Okla.1992); 60 O.S.1991 § 312. Pursuant to 12 O.S. 1991 § 2015, if the wrong action has been brought, amendments to pleadings are liberally allowed. For simplicity, we refer to the action as one in conversion.

*Id.* at 232 n.4 (stating same in relation to plaintiff's claim that school board had converted monetary funds). Unified does not advance a specific objection to this amendment, but instead rests on its Motion to Dismiss briefing, which fails to address the effect of alleging a "thing in action." Given *Brown* and the absence of a specific objection from Unified, the Court will grant Plaintiff leave to amend the conversion claim as set forth in the First Amended Complaint.

**IV.  Conclusion**

For the reasons discussed herein, Unified's Motion to Dismiss (Doc. 11) is GRANTED IN PART and DENIED IN PART, and Plaintiff's Opposed Motion for Leave to File an Amended Complaint (Doc. 62) is GRANTED IN PART and DENIED IN PART. Plaintiff's OCPA claim is

dismissed, and Plaintiff is permitted to file a First Amended Complaint, alleging claims for unjust enrichment and "Conversion/Thing in Action," within ten (10) days of the date of this Order.

**SO ORDERED this 17th day of March, 2011.**

_____
**TERENCE C. KERN
UNITED STATES DISTRICT JUDGE**