**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| Carla Childs, as Special Administrator ) | |
| of the Estate of Ethel Kirk, and ) | |
| on behalf of Herself and ) | |
| Others Similarly Situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 10-CV-23-PJC |
| ) | |
| Unified Life Insurance Company, and ) | |
| MobileCare 2U, LLC ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court are the Joint Motion for Class Certification and Approval of Settlement, and for an Order Prelim inarily Approving Settle ment Agreement, Approving Form of Notice to Class Members, and Setting Date for Settlement Fairness Hearing (Dkt. #121) and Plaintiff Carla Childs' Unopposed Motion for Attorneys' Fees, Reimbursed Costs and for Incentive Award (Dkt. #122). The parties have consented to proceed before the undersigned.[1]

This is a proposed class action filed by Plaintiff Carla Childs, alleging Defendant MobileCare 2U, LLC ("MC2U") has sold and Defendant Unified Life Insurance Company ("Unified") has underwritten an illegal dental insurance policy to residents of Oklahom a nursing facilities receiving Medicaid ass istance (the "Dental Plan"). Ms. Ch ilds alleges that certain

---

[1] In a telephone conference with the parties on October 25, 2011, the Court discussed whether the parties had an y concern with proceeding under the jurisdiction of a Magistrate Judge in li ght of *Stern v. Marshall*, __ U.S. __, 131 S.Ct. 2594 (2011), and gave the parties until Novem ber 1, 2011 to review the case and consult with their clients and notify the Court if they wished to withdraw their consent. No such notice has been filed and the parties confirmed at the November 18, 2011 hearing that they wished to proceed before the undersigned.

characteristics of the Dental Plan violate Oklahoma Medicaid regulations, O.A.C. §317:30-5-133.1 in particular.  Her principle claim is that due to the alleged illegal nature of the Dental Plan, MC2U and Unified must, in the form of restitution, return their respective shares of the monthly premiums received for the policy over time.

MC2U and Unified vigorously deny Ms. Childs's allegations and affirmatively claim that the Dental Plan complies with applicable law.  On September 19, 2011 the parties informed the Court that they have reached a settlement in principle and have agreed to move for settlement class certification and seek a final settlement of this matter. (Dkt. #115).  On October 11, 2011 the parties filed a Joint Motion for Class Certification and Approval of Settlement, and for an Order Preliminarily Certifying Settlement Class, Preliminarily Approving Settlement Agreement, Approving Form of Notice to Class Members, and Setting Date for Settlement Fairness Hearing (the "Joint Motion") (Dkt. #121).  Attached to this motion, among other things, is a "Settlement Agreement" spelling out the essential terms of the parties' negotiated settlement.  (Dkt. #121-1).  Proposed class counsel, lawyers from Bailey/ Crowe & Kugler, LLP and Maples Law Firm ("Class Counsel"), have also filed an Unopposed Motion for Attorneys' Fees, Reimbursed Costs, and for Incentive Award (Dkt. #122).

At the hearing before the Court on November 18, 2011, the Court set forth its concerns regarding the proposed settlement terms and on November 28, 2011, the parties submitted substitute settlement documents addressing those concerns.  (Dkt. ## 132, 133).   [2]  The matter, therefore, is at issue.

---

[2]  The revisions include the following: (1) a simplified "opt out" form ; (2) an easily accessible "objection" form; and (3) fewer requirements for objections. (Dkt. #133).

The Court has reviewed the settlement-related filings and the evidence attached to them. Based on its review of these items, the Court, without prejudice to any class member to assert appropriate objections, **GRANTS** the Joint Motion, as amended. (Dkt. #121, 133). The Court finds this matter is suitable for settlement class certification and preliminarily approves the proposed class action settlement. In addition, the Court, subject to class member objections and the ultimate number of actual claims, preliminarily **GRANTS** Class Counsel's Unopposed Motion for Attorneys' Fees, Reimbursed Costs, and for Incentive Award (Dkt. #122).

A certified class must satisfy the requirements of Fed. R. Civ. P. 23, even in a settlement context. *E.g. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997). Accordingly, the Court first will analyze the suitability of certifying this matter as class action under Rule 23. In doing so, ". . . .the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982) (quotations omitted); *see, e.g., Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("[N]othing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); *Cook v. Rockwell Int'l Corp.,* 151 F.R.D. 378, 381 (D. Colo. 1993). After analyzing the elements of Rule 23 class certification, the Court will preliminarily address and discuss the overall fairness of the proposed settlement. It will then address the adequacy of notice the parties propose to send out. Finally, the Court will address and discuss its preliminary ruling on class counsel's Unopposed Motion for Attorneys' Fees, Reimbursed Costs, and for Incentive Award.

# I.

## Background and Ms. Childs' Allegations

In approximately 2004 MC2U began marketing and selling the Dental Plan to residents of Oklahoma nursing facilities, many of whom were receiving Medicaid assistance.  The Dental Plan was underwritten by Defendant Unified.    The Dental Plan's monthly premium was originally forty dollars ($40.00).  Unified and MC2U stopped  selling the policy in early 2009, at which time the monthly prem ium had been inceased to sixty dollars   ($60.00).  Unified has calculated the Dental Plan, since 2004, to have been sold to one thousand six hundred and seventy-two (1,672) Oklahom a nursi ng facility residents receiving   Medicaid assistance. (Dkt. #121-4).

The Dental Plan not only provides its insureds coverage for standard  procedures such as teeth cleanings and fillings, but also coverage for dentures and certain denture-related services.  Some denture procedures are not available until a policyholder has paid premiums for at least six (6) months.  The Dental Plan requires insureds to pay deductibles or co-pays in so me limited circumstances.  No pre-determination of denture need is made before the Dental Plan is sold to a given Medicaid resident.

In 2001 the Oklahom a Health Care Authority  ("OHCA") a dded "Dentures and Related Services" to the list of item s that Ms. Childs alleges should be paid  for out of the "daily rate for routine services" m onies Medicaid p eriodically pays Oklahoma nursing facilities.  The relevant portion of the applicable OHCA regulation containing this addition is as follows:

> (a) Nurs ing facility care includes routine items and services that must be provided directly or through appropriate arrangement by the facility when required by SoonerCare[3] residents.  Charges for routine services may not be made

---

[3] "SoonerCare" is the "Medicaid program administered by the Oklahoma Health Care Authority." OAC §317:25-7-3.

to resident's personal funds or to resident family members, guardians or other parties who have responsibility for the resident. If reimbursement is available from Medicare or another public or private insurance or benefit program, those programs are billed by the facility. In the absence of other available reimbursement, the facility must provide routine services from the funds received from the regular SoonerCare vendor payment and SoonerCare resident's applied income, or spenddown amount.

*   *   *

(b)(17) Dentures and Related Services. Payment for the cost of dentures and related services is included in the daily rate for routine services. The projected schedule for routine denture services must be documented on the Admission Plan of Care and on the Annual Plan of Care. The medical records must also contain documentation of steps taken to obtain the service. When the provision of denture services is medically appropriate, the nursing facility must make timely arrangements for the provision of these services by licensed dentists. In the event dentures services are not medically appropriate, the treatment plan must reflect the reason the service is not considered appropriate, i.e., the patient is unable to ingest solid nutrition, comatose, etc. When the need for dentures is identified, one set of complete dentures or partial dentures and one dental examination is considered medically appropriate every three years. One rebase and/or one reline is considered appropriate each three years. It is the responsibility of the nursing facility to ensure that the client has adequate assistance in the proper care, maintenance, identification and replacement of these items. The nursing facility cannot set up payment limits which result in barriers to obtaining denture services. However, the nursing facility may restrict the providers of denture services to providers who have entered into payment arrangements with the facility. The facility may also chose to purchase a private insurance dental coverage product for each SoonerCare member client. The policy must cover at a minimum all denture services included in routine services. The member cannot be expected to pay any co-payments and/or deductibles. If a difference of opinion occurs between the nursing facility, member, and/or family regarding the provision of dentures services, the OHCA will be the final authority. All members and/or families must be informed of their right to appeal at the time of admission and yearly thereafter. The member cannot be denied admission to a facility because of the need for denture services.

O.A.C. §317:30-5-133.1(a), (b)(17). Ms. Childs alleges that this regulation, which is unique to Oklahoma Medicaid governance, requires that Medicaid funds be utilized to pay for dentures and related services, either directly, as needed, or indirectly via the purchase of denture insurance. *Id*. The regulation also prohibits any charges for deductibles and co-pays related to these

services, and further mandates that a documented need for dentures is established before dentures or insurance for them are sold. *Id*.

Marketing and dental and denture services provided under the Dental Plan have historically been handled by MC2U. Invoicing and collection of Dental Plan premiums, in addition to risk underwriting, have been performed by Unified. As compensation for their respective roles MC2U and Unified have shared in the monthly policy premiums on an 80%/20% basis. That is, each month, MC2U has received 80% of the policy premiums, while Unified retained 20%. From its 80% share of the policy premiums, MC2U paid the cost and expense of providing dental care to insureds as well as sales agents' compensation and certain other expenses. Similarly, Unified utilized its 20% to pay for underwriting risk, for administrative costs related to collecting premium and managing the business, and for other expenses such as premium taxes. Between 2004 and 2009, a total of approximately $1,497,416.34 in policy premiums has been collected. On average, therefore, approximately $300,000.00 in premiums has been collected annually.

While residing at Broken Arrow Nursing Home in Broken Arrow, Oklahoma, Ms. Ethel Kirk, the mother of Ms. Childs[4], applied for and purchased the Dental Plan. Ms. Kirk purchased the policy in April 2007, and was an insured under it until May 2008. At all times during her ownership of the Dental Plan Ms. Kirk was a Medicaid recipient. Unified would invoice Ms. Kirk for policy premiums through Ms. Childs, who had power of attorney for Ms. Kirk and maintained a joint depository/checking account with Ms. Kirk at a local bank in Perry, Oklahoma. On a monthly basis Ms. Kirk's Social Security check would be direct-deposited into the bank in

---

[4]     Ms. Kirk passed away on May 30, 2009. Ms. Childs has been appointed the Special Administrator of Ms. Kirk's estate and brings this action in that capacity.

Perry.  Next, Plaintiff would retain Ms. Kirk's  personal needs allowance, then pay Unified the

premium for the Dental Plan.  In a typical month Ms. Childs would then remit the balance of Ms.

Kirk's Social Security income to Broken Arrow Nursing Home.

Ms. Childs principally alleges the Dental Plan sold to her mother was an illegal contract.

She claims it is illegal in light of O.A.C.  §317:30-5-133. 1 because: 1) it was marketed and

invoiced in a manner requiring her to utilize her personal funds – monthly Social Security

income -- to pay the monthly premiums; 2) the Dental Plan requires insureds to pay deductibles

or co-pays in certain circumstances; 3) there was no predetermination of denture need before Ms.

Kirk was sold the Dental Plan; and 4) an insured  under the Dental Plan is not eligible for certain

denture benefits until he or she has paid premiums for at least six months.  Ms. Childs claims the

illegal contract creates a basis to assert MC2U  and Unified were unjustly enriched by having

received approximately three hundred thousand dollars ($300,000.00) in yearly premium

income.  She thus requests restitution relief for her and the proposed class.  Ms. Childs further

asserts the Oklahoma law claim of "thing in action" under 60 Okla. St. §312 which, Ms. Childs,

permits recovery of exemplary damages.  Again, MC2U and Unified have denied all of Ms.

Childs's claims and assertions, and have affirmatively alleged that the Dental Plan complies with

all applicable laws and regulations.

## II.

### The Proposed Settlement Class

Ms. Childs, MC2U and Unified propose a settlement class defined as follows:

Any and all individuals who are citizens or residents of Oklahoma, who:

i)      are residing or that have resided in Oklahoma nursing facilities;

ii)     are receiving or that have received  Medicaid assistance, via SoonerCare or
        otherwise, from the State of Oklahoma;

      iii)      are eligible, or th at have been e ligible, to receive denture-related services under O.A.C. §317:30-5-133.1(b)(17); and

      iv)      have purchased and out of their own funds, pay or have paid, monthly premiums for the Dental Plan.

Excluded from the Class are the following individuals, or categories of individuals:

      a. Individuals or entities, if any, who timely opt out of this proceeding using the correct protocol for opting out that will be formally established by the Court;

      b.      Any and all federal, state, or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;

      c.      Any currently sitting Oklahom a state or federal court judge or justice in the current style and/or any persons within th e third degree of consanguinity to such judge or justice;

      d.      Any person who has given notice to either Defendant, by service of litigation papers or otherwise, and alleged he or she has suffered personal physical injury by virtue of the acts or omissions alleged herein;

      e. Individuals, if any, that have previously (*ie*. on any date before this action is f iled) de manded from either Defendant, by service of litigation papers or otherwise, a return of all or part of the premium monies principally sought as damages or relief herein, and received such monies, from either Defendant, or from anyone or any entity acting on their behalf.

(the "Settlement Class").

To satisfy the requirements of Rule 23(a), the class must be adequately defined so that

potential class members can be identified. *Joseph v. General Motors Corp.*, 109 F.R.D. 635, 638

(D. Colo. 1986). However, the class does not have to be so easily ascertainable that every

potential member can be identified at the beginning of the action. *Id*. at 637. Nevertheless, the

class description msst be sufficiently definite so that it is "administratively f easible" f or the

Court to determine whether a particular individual is a member. *Davoll v. Webb*, 160 F.R.D. 142,

144 (D. Colo. 1995).

The Court finds the settlement class definition the parties propose is sufficiently definite

so that it is administratively f easible to identify class members. Based on a review of the

evidence submitted, the declaration of Unified's Mr. John Tiller in particular, MC2U and Unified have extensive reco rds concerning the identity of Oklahoma purchasers of the Dental Plan . These records include mailing addresses that facilitate the determination of whether these purchasers were residing in nursing facilities. Moreover, having the mailing addresses will enable the m ailing of settlement class notice according to the te rms of the proposed settlement, and consistent with Rule 23(c)'s "best notice that is practicable" standard.

## III.

### Elements of Rule 23(a)

A class may be certified only if all four of the following prerequisites are met:

(1) Numerosity: "the class is so numerous that joinder of all members is impracticable"; (2) Commonality: "there are questions of law or fact that are common to the class"; (3) Typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) Adequacy of representation: "the representative parties will fairly and adequately represent the interests of the class."

*Trevizo v. Adams* , 455 F.3d 1155, 1161 -1162 (10th Cir.2006)(citing Rule 23(a)).

### i. Numerosity

The first Rule 23(a) elem ent is numerosity. The burden is upon the parties to established that the proposed class is so numerous as to m ake joinder impracticable. *Id*. at 1162. The Tenth Circuit does not prescribe any set formula to satisfy the numerosity element, nor has it said numerosity may be presumed by a specific number of class members. *Id.* Neither are the parties required to prove the identity of each class member or the specific number of members. *Stambaugh v. Kansas Dept. of Corrections*, 151 F.R.D. 664, 673 (D. Kan. 1993); *Commander Properties Corp. v. Beech Aircraft Corp.*, 164 F.R.D. 529, 535 (D. Kan. 1995). Instead, because numerosity is such a fact-specific inquiry, the Court is granted "wide latitude" in making the determination. *Trevizo*, 455 F.3d at 1162.

The class-certification evidence shows the   Dental Plan has been purchased by one thousand six hundred and seventy-two (1,672) Oklahoma Settlement Class members receiving Medicaid assistance.  The Court finds that the Rule 23(a)(1) element of numerosity is sufficiently established.

**ii.  Commonality**

The second prerequisite to class certification is the existence of "questions of law or fact common to the class." F ed. R. Civ. P. 23(a).  Im portantly, commonality is no t required for each issue that will be raised in the case.  *Realmonte v. Reeves,* 169 F.3d 1280, 1285 (10th Cir. 1999).  Instead, "Rule 23 is s atisfied when the legal question link ing the clas s members is su bstantially related to the resolution of the litigation."  *Id.* (internal quotations om itted) (quoting  *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995)).  In  fact, commonality is "satisfied if the named plaintiffs share at least one question of f act or law with the grievances of the prospective class."  *Baby Neal  v.  Casey,* 43 F.3d 48, 56 (3d Cir. 1994).  As a result, the commonality requirement is of  tentimes easily  satisfied.  *Id.* (c iting 1  N EWBERG ON   CLASS ACTIONS § 3.18 (4th ed. 2002)).

A review of the class-certification briefing  and evidence reveals several questions of Oklahoma law or fact comm on to the class.  These include: 1) whether the Dental Plan is illegal as per §317:30-5-133.1;  2) whether MC2U and Unified have wrongful ly or inequitably retained their shares  of Dental Plan premium income over tim e; and 3) for purposes of Ms. Childs's "thing in action" claim , whether MC2U and Unified have exercised dominion and control over premium income retained that is inc onsistent with the rights Ms. Childs and class m embers have in such funds; and 4) whether, based on the "thing in action" clam m, either MC2U or Unified has engaged in conduct deserving of  an award of exemplary damages.  Given the presence of these

common questions of law and fact, the Court encounters no difficulty in finding Rule 23(a)(2) commonality. That element is satisfied.

### iii. Typicality

The purpose of the typicality requirement is to assure the interest of the named class representative aligns with the interests of the class. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Typicality refers to the nature of the claim of the class representative and not to the specific facts from which it arose or to the relief sought. *Id.* Factual differences will not render a claim atypical if the claim is based upon the same legal or remedial theory and arises from the same events or course of conduct. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *Edgington v. R. G. Dickinson and Co.*, 139 F.R.D. 183, 189 (D. Kan. 1991).

Typicality requires the class representative to have the same interests and seek a remedy for the same injuries as other class members. *See, e.g., E. Tex. Motor Freight Sys. Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977). However, there is no requirement that the class representatives have circumstances identical to those of the potential class members. *See Milonas v. Williams,* 691 F.2d 931, 938 (10th Cir. 1982), *cert denied,* 460 U.S. 1069 (1983). In fact, "[f]actual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist." *Id.*

Ms. Kirk resided in an Oklahoma nursing facility, Broken Arrow Nursing Home, and received Medicaid assistance while there. She purchased the Dental Plan during her stay at Broken Arrow Nursing Home, and paid premiums for it over several months. The terms and contents of the Dental Plan have not materially changed since the Dental Plan was originally introduced in Oklahoma in 2004. Ms. Childs is the duly appointed special administrator of Ms. Kirk's estate. Given Ms. Childs's claims in this action, and these supporting facts, it is apparent

11

Ms. Childs has the same interests and seeks a remedy for the same injuries as other class members.  The Court finds the Rule 23(a)(3) element of typicality is also satisfied.

### iv.  Adequacy of Representation

For plaintiffs to be fair and adequate representatives of the class, three requirements must be met: counsel must be qualified, experienced, and generally able to conduct the proposed litigation; the class representatives must have sufficient interest in  the outcome to ensure vigorous advocacy; and the class representatives and their counsel must not have antagonistic or conflicting interests with other members of the pr oposed class.  Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem*, 521 U.S. at 625.

> "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class."

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F .3d 1180, 1187-1188 (10t h Cir. 2002)(quoting *Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1020 (9th Cir. 1998))

The Court's review of the work performed in  this matter, and the class-certification evidence, shows Ms. Childs's counsel are experienced litigators, including class action litigators. They are eminently capable of conducting this matter as a class action, especially in light of the presumption of competence and experience that applies.   *See Zapata v. IBP, Inc.*, 167 F.R.D. 147, 161 (D. Kan. 1996) ("In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the action on behalf of the class.").  Also, there is no evidence of any conflict of interest with other class members.

Moreover, as established by her declaration, M s. Childs h as a sufficient interest in the outcome of this matter to ensure vigorous advocacy.  She voiced concerns  about the Dental Plan

to her counsel, has participated in the litigation by reviewing documents and providing written discovery answers, and by becoming informed regarding the settlement terms the parties seek to approve.  She is generally familiar with the contours of the litigation and is genuinely concerned about the Dental Plan having been sold to individuals similarly situated to her mother, Ms. Kirk. Finally, in order for a conflict of interest to render a named class representative inadequate, the conflict must be more than merely speculative or hypothetical. 5 James WM. Moore,  M OORE'S FEDERAL PRACTICE, § 23.25[2][b][ii] (3d. ed. 2005).  The Court has seen no evidence that Ms. Childs has antagonistic or conflicting interests with other members of the Settlement Class.

The Rule 23(a)(4) element of adequacy of representation is satisfied.  Plaintiff Ms. Carla Childs is hereby appointed Settlement Class representative.  Her counsel, David W. Crowe, John W. Arnold (Bailey/Crowe & Kugler, LLP) and L. Ray Maples II (Maples Law Firm ), are a ll appointed Settlement Class counsel in this matter.

## IV.

### Elements of Rule 23(b)(3)

The proposed settlement provides partial restitution of Dental Plan monthly premiums retained by MC2U and Unified.    Indeed, Ms. Childs principally sought such relief in initiating this litigation.  Moreover, as part of the proposed settlement MC2U  has agreed to cease marketing and selling, and Unified has agreed to cease underwriting, the allegedly illegal Dental Plan in Oklahoma.  Permanent injunctive relief is sought to facilitate that agreed relief.  This raises the initial question of whether settlement class certification, at least in part, may be appropriate under Rule 23(b)(2).

Rule 23(b)(2) states class-wide injunctive relief is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a

13

whole." *J.B. ex rel. Hart v. Valdez,* 186 F.3d 1280, 1288 (10th Cir. 1999)(quoting Rule 23(b)(2)); *Shook v. El Paso County,* 386 F.3d 963, 971 (10th Cir. 2004).  Certification under Rule 23(b)(2) permits application of a common remedy to the class.  *Shook,* 386 F.3d 971.  The common remedy to the class here is the  cessation of  Dental Plan sales.  Still,  in this case monetary relief for Ms. Childs and the class is the primary remedy sought by Ms. Childs and agreed upon in the proposed settlement.  Accordingly, Settlement Class certification is appropriate only if the Rule 23(b)(3) elements of predominance and superiority are satisfied. *Harrington v. City of Albuquerque*, 222 F.R.D. 505, 516 (D.N.M. 2004)("Where monetary damages are the predominate remedy sought, certification is usually only appropriate pursuant to Fed. R. Civ. P. 23(b)(3).").  The Court will address those two elements in turn.

   i.  **Predominance**

   Satisfaction of the 23(a) commonality element does not satisfy the predominance inquiry of Rule 23(b), as the latter is "far more demanding" and tests "whether proposed   classes are sufficiently cohesive to warrant  adjudication by representation." *Amchem*, 521 U.S. at 623-24. "That common questions of law or fact predominate over individualized questions means that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228, 1233 (11th   Cir. 2000) (internal quotation om itted).  While individual issues can  exist, they "must be of lesser overall significance than the common issues, and they must be manageable in a single class action." *Sanneman v. Chrysler Corp.,* 191 F.R.D. 441, 449 (E.D. Pa. 2000).  To determine whether class-wide issues predominate, the Court must consider the impact their resolution will h ave on ea ch class member's underlying cause of action. *Rutstein*, 211 F.3d at 1234.

Here, the principle issue is whether the Dental Plan, as marketed and sold to Ms. Kirk and members of the proposed class, is illegal for the various reasons discussed herein.  Any sub-issues created by this principle issue are uniform, mainly legal ones, especially to the extent the Dental Plan's deductibles and co-payments – obvious from the face of the contract – serve as the basis of the illegality claim.  Admittedly, some factual and legal examination may be required to determine if the Dental Plan's denture component violates O.A.C. §31 7:30-5-133.1 as to each Settlement Class member.  But this examination, even if ultimately n ecessary, is not overly individualized and cannot detract from predominance, especially  in view of the uniform Oklahoma Medicaid rules, because the Dental Plan  is basically a form agreement, because it is marketed the same way to class members receiving Medicaid assistance, and since it is bought and paid for similarly amongst  Settlement Class members.  *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir. 1968),  *cert denied*, 394 U.S. 928 (1969) (In deciding the predominance factor, the Court will c onsider whether there is a common nucleus of operative f acts and whether material variations in the claims exist); *see also Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 299, 302 (N.D. Ill. 2005)(form agreements  supporting commonality and predominance); *Steinberg  v.  Nationwide  Mut.  Ins.  Co.*, 224 F.R.D. 67, 77 (E.D.N.Y. 2004) (finding predominance with a "standard form contract")

The Court finds Rule 23(b)(3) predominance to exist.

## ii.  Superiority

The superiority requirem ent of Rul e 23(b)(3 ) compels the Court to determine whether a class action is superior to other m ethods of adjudicating the cont roversy at issue.  *Smith v. MCI Telecommunications Corp.*, 124 F.R.D. 665, 679 (D. Kan. 1989). The rule spells out four factors for the Court to consider in this inquiry.  The Rule 23(b)(3) factors include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of  any  litigation concerning the controversy already  commenced by or against members of the class**;** (C) the desirability or undesirability of concentrating  the litigation of the claims in the particular foru m; (D) the difficulties likely  to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b).  The Court has reviewed thes e factors against the backdrop of the allegations and evidence presented by the parties.  Given the relatively sm all amount of m oney involved on a per-class-member basis – in most cases no more than a few hundred dollars – class members have no incentive to individually prosecute a similar action against MC2U and Unified.  In addition, since all class members receive Medicaid assistance, they are all indigent to a degree and presumably cannot pay lawyers.   Further, neither the parties nor the Court is  aware of any similar clas s action litigation in other Oklahoma courts concerning the Dental Plan and the alleged actions of MC2U and Unified.  Finally, since Ms. Kirk purchased the Dental Plan in issue while residing in the Northern  Distric t of  Oklahoma, this Court is  perf ectly situated and qualified to handle this matter.

As to manageability, th ere will be no difficulty in the management of this action a s a class action .  There are no multi-state choice of  law isi ues to  confront, as Oklahoma law exclusively applies to all claims Ms. Childs has asserted.  Neither are there any fraud-based claims creating individual reliance issues which might, in turn, create predominance or manageability concerns.  Finally, given the ready availability of insured contact and premium payment inform ation, the calculation, apportionment and distribution of settlement sums yield virtually no m anageability concerns at all.   *See Smith,* 124 F.R.D. at 677 (citing   *Windham v. American  Brands,  Inc.*, 565 F.2d 59, 68 (4th Cir. 1977), cert. denied, 435 U.S. 968 (1978))("Thus, if the computation of da mages following a ruling in favor of the class is a largely

16

mechanical task, then 'the existence of individualized claims for damages seems to offer no barrier to class certification….'")).

The Court finds a class action is the superior method to handle Ms. Childs's claims against MC2U and Unified.

## V.

## The Proposed Settlement

Having determined the proposed class action meets the requirements of Rule 23 and should be certified as a settlement class, the Court now addresses whether the settlement proposed by the parties should preliminarily be approved. The Court has broad discretion in deciding whether to grant approval of a class action settlement. *Jones v. Nuclear Pharmacy, Inc.,* 741 F.2d 322, 324 (10th Cir. 1984). "In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate." *Id*.

In making the determination whether to approve a class action settlement, the Court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981). "This is because the essence of settlement is compromise, and settlements are generally favored." *Wilkerson v. Martin Marietta Corp.,* 171 F.R.D. 273, 284 (D.Colo. 1997)(*citing Williams v. First Nat. Bank,* 216 U.S. 582, 595(1910)).

### i.   The Tenth Circuit Settlement Approval Factors

The Tenth Circuit has outlined four non-exclusive factors to be considered in determining whether a proposed settlement of a class action is fair, reasonable, and adequate. They are as follows:

1.      whether the proposed settlement was fairly and honestly negotiated;

2.      whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

3.      whether the value of      an immediate recovery outweighs the mere possibility of   future relief   after protracted and expensive litigation; and

4.      the judgment of the parties that the settlement is fair and reasonable.

*Rutter*, 314 F.3d at 1188.

### ii.  Overview of the Settlement

The settlement proposed by the parties revolves around MC2U and Unified agreeing not to resume sales of the Dental Plan in  Oklahoma with Unified establishing a common settlement fund of nine hundred thousand dollars ($900,000.00) and MC2U contributing to the settlement via a separate payment to Unified.  With the number of identified class members (projected to be one thousand six hundred and seventy two (1,672),   a settlement award will  be calculated based on a division of the common fund amount, after class counsel's f ee is deducted.  As discussed, *infra*, class counsel has petitioned the Court for a thirty-three and one-third percent (33 1/3%) fee.  Thus, should the fee award be finally ap     proved, the funds available to the class for the calculation would be six hundred thousand dollars ($600,000.00).  There are 28,127 total eligible Settlement Class member coverage months.  Thus, for each  month an eligib le Settlement Class member was: (i) a Medicaid recipient; and (ii)  insured under the Dental Plan, he or she would be entitled to a twenty one dollar and thirty three cent ($21.33) reimbursement.

A claims administrator, Dahl, Inc., has been   retained at the expense of Unified, and the parties have proposed having the claims administrator perform both direct-mail notice and publication notice in th e *Tulsa World* and  *Daily Oklahoman* newspapers.  The notice will not only alert class m embers to the fact of settlement class certification, but will also give them  the right to opt out of the settlement, or object to it.  (Dkt. #133-1). If Settlement Class members elect to not opt out and participate in the settlement, they must fill out and return by m ail a claim form which essentially verifies  a given class member is a Medicaid recipient and has purchased

and owned the Dental Plan. (Dkt. #121-2).  By agreement, any unclaimed settlement funds revert

to Unified.  The parties have further agreed to the following additional payments as follows: 1)

up to fifteen thousand dollars ($15,000.00) in costs and expenses to be reimbursed to class

counsel; and 2) up to a ten thousand dollar ($10,000.00) incentive award for Ms. Childs.  In

exchange for these settlement-related awards, Ms. Childs has agreed to dismiss this action with

prejudice as to all participating class members, and to provide a release on behalf of those same

individuals.

### iii. The Settlement Was Fairly and Honestly Negotiated

The Court is concerned with the protection of class members whose rights may not have

been given "adequate consideration during the settlement negotiations." *Wilkerson*, 171 F.R.D. at

283; *see also* 7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL

PRACTICE AND PROCEDURE §1979.1 (3d ed. 2005). The Court is also required to "ensure that the

agreement is not illegal, a product of collusion, or against the public interest."  *United States v.*

*State of Colorado*, 937 F.2d 505, 509 (10th Cir. 1991).  The fairness of the negotiating process is

to be examined "'in light of the experience of counsel, the vigor with which the case was

prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'"

*Johnson v. City of Tulsa*, 2003 W L 24015151, at *7 (N.D.Okla. May12, 2003)(      *quoting*

*Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983)).

Not lost on the Court is that a significant component of this settlement is MC2U and

Unified committing to not sell the Dental Plan in Oklahoma.  Not only has Ms. Childs been able

to obtain that relief, she has also obtained a sizeable monetary award for class members, without

creating any differing awards or treatment amongst them. As noted, ecch eligible Settlement

Class member will be entitled to a reimbursement of twenty one dollars and thirty three cents

($21.33) for each month he or she was: (i) a Medicaid recipient; and (ii) insured under the Dental Plan.  The evidence reveals the monthly premium for the policy was forty dollars ($40.00) in 2004.  The premium was increased to fifty four dollars ($54.00) for approximately one year, and to sixty dollars ($60.00) at the time sales of it were ceased in 2009.  Additionally, the Dental Plan policies which included vision coverage were made available in 2008 at a cost of seventy dollars ($70) per month.  The class award of twenty one dollars and thirty three cents ($21.33) per month thus represents a 30% to 50% portion of the monthly premiums actually paid.

In the Court's view, this is a sound settlement based on those numbers alone.  Its soundness is enhanced by the fact that many class members, including Ms. Childs, have received some dental care in exchange for the dental premiums they have paid.  Consequently, it can be argued MC2U and Unified should not be required to disgorge all Dental Plan premiums they have received.  Some of those premiums arguably went to fund a legitimate, legal purpose: non-denture dental care or treatment.

Moreover, the Court does not detect any unfairness in the settlement negotiating process.  The case was originally filed in September 2009.  Since that time, the parties have engaged in extensive briefing regarding, among other things, issues surrounding motions to dismiss and to transfer venue.  Further, Unified and MC2U, combined, have produced in excess of twenty-five (25,000) documents in response to written discovery.  Armed with those documents, Ms. Childs's counsel deposed a corporate witness for Unified and had scheduled many additional Unified and MC2U depositions to occur.  Both before and after the corporate witness deposition counsel for Ms. Childs, Unified and MC2U engaged in settlement talks.  Counsel for Ms. Childs has been uniquely positioned to understand the strengths and weakness of Ms. Childs's case, and how to structure a potential settlement, having already negotiated a settlement in a prior, similar

class-action case.  *See McNeely v. Nat'l Mobile Health Care, LLC*, 2008 W L 4816510 (W .D. Okla. Oct. 27, 2008).

Shortly b efore the additional corporate representative depositions,  and before a September 27, 2011 court-ordered settlement conference was to occur, the parties arrived at a settlement.  The Court is convinced the negotiated settlement is the product of Ms. Childs, her experienced class counsel, and defendants having diligently litigated this action, and of them possessing adequate information about the potential  benefits and risks of proceeding forward to class certification and trial.  *See e.g. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.), *cert. denied sub nom.*, *Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc.*, 544 U.S. 1044 (2005)  (a "'presumption of fairness,  adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" (*quoting* MANUAL FOR COMPLEX LITIGATION, THIRD § 30.42 (1995))). The first factor is satisfied.

iv.     **Whether Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation In Doubt**

The next factor requires an examination of  whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt.  The presence of such doubt tips the balance in favor of settlement because "settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after  long and expensive litigation." *In re Qwest Communications Intern., Inc.*, 625 F.Supp.2d 1133, 1138 (D. Colo. 2009).  Although the Court has ruled against Unified with respect to a portion of its m otion to dismiss under Rule 12(b)(6), that ruling provides no guarantee that  Ms. Childs will ultimately prevail on the merits. The Court has reviewed the extensive briefing and evidence presented by the parties thus far.  In doing so it has become familiar with the facts and legal standards applicable to them.  The Court

21

finds questions of law and fact to exist on a sufficient magnitude to warrant preliminary approval

of the proposed settlement.  The Tenth Circuit's second settlement-approval factor is satisfied.

### v.   Whether the Value of An Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation

As for the third factor, the "'value of an immediate recovery' means 'the monetary worth

of the settlement.'" *Wilkerson,* 171 F.R.D. at 283.  The Court has already discussed the monetary

worth of this settlement, including why that sum is fair and reasonable in the circumstances.  The

class will be well-compensated, relatively speaking, and is better off receiving compensation

now as opposed to being compensated, if at all,  several years down the line, after the matter is

certified, tried, and all appeals are exhausted.  In addition, the fact that monetary relief is coupled

with a commitment that the Dental Plan will no longer be sold in Oklahoma removes any doubt

that this settlement is sufficiently valuable to warrant approval.  The Court finds this third

element is satisfied.

### vi.  The Judgment of the Parties that the Settlement Is Fair and Reasonable

"Counsels' judgment as to the fairness of the agreement is entitled to considerable

weight." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006); *Marcus v. Kansas Dept. of

Revenue*, 209 F. Supp.2d 1179, 1183 (D. Kan. 2002).  As noted, counsel for Ms. Childs has

previously settled a similar class action in the *McNeely* matter.  For this reason, their view of the

fairness of this settlement is a substantial factor.  Further, counsel for all parties have arrived at

an arms' length negotiated settlement which provides benefits to Ms. Childs, members of the

class, MC2U and Unified.  In addition, one significant term of the settlement is that the Dental

Plan will never be sold in Oklahoma again.  This particular settlement term creates scores of

unknown, future class-settlement beneficiaries.  The Court holds the fourth factor is established

as well.

In summary, based upon the totality of the evidence offered with respect to each of the four factors identified by the Tenth Circuit, the Court concludes the proposed class action settlement is fair, reasonable and adequate.

## VI.

### Class Notice

"Under Fed. R. Civ. P. 23(e)(1)(B ), a district court approving a class action settlement 'must direct notice in a reasonable m anner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.'" *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 943 (10th Cir. 2005).  "In addition to the requirements of Rule 23, the constitution's Due  Process Clause also gu arantees unnamed class members the right to notice of certification or settlement." *Id*. at 943-44.  Generally, the Court must direct to class members the "best notice practicable under the circumstances including individual notice to all members who can be identified  through reasonable effort." *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001).

The parties have jo intly submitted a proposed  notice plan, along with  a draft of the class certification/settlement m ail notice and print notice for which the parties seek approval. (Dk t. ##121-1, 13 3-1).  The notice plan contemplates direct mailings to  the billing add resses of all class members.  In most cases these addresses will be the Oklahom a nursing facilities at which Dental Plan subscribers have resided.  Unified's business records contain this billing-address information.  To account for the possibility of deceased class members and  the need to  send notice information to estate representatives, the parties contem plate supplemental notice via publication in Oklahoma's two major daily newspapers,  *Daily Oklahoman* and  *Tulsa World*.  Finally, if any class member has questions about the class certification  or settlement, a 1-800

number has been established to handle those questions.[5]  The court finds the manner of notice to be reasonable, and to satisfy both Rule 23 and constitutional due process standards.

As for the content of the notice, the parties contemplate a form of notice that complies with Fed. R. Civ. P. 23(c)(2)(B) (Dkt. #133-1).  The notice is drafted in plain, easily understood language, and clearly and concisely describes the nature of the action, contains the class definition, and sets forth the class claims and issues.  Moreover, the notice explains that any class member that so desires may enter an appearance through an attorney, explains the opt-out rights, and how the opt-out rights must be executed.  Finally, the notice adequately articulates the settlement's impact on class members in the event they choose not to opt out.

The Court approves of the proposed notice plan as amended, including the manner and form of notice.  All parties and the claims administrator are ordered to comply with the notice plan in mailing out notice and in processing the claims forms sent in by participating class members.

## VII.

### Attorneys' Fees

The settlement creates a common fund of nine hundred thousand dollars ($900,000.00).[6]  The preferred method of determining a reasonable attorney fee award in common fund cases is

---

[5]     "As a practical matter, notice cannot include all information that might be of concern to absentee class members." 3 NEWBERG ON CLASS ACTIONS §8.31 (4th ed. 2002).  Consequently, "some procedure [should be provided] whereby class members, seeking more detailed information, can examine relevant data."  *Id.*  Sufficient information should be provided "so that each class member can make a rational judgment on whether to exclude himself from the action." 7  AA CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1787 (3d ed. 2005). See 3 NEWBERG ON CLASS ACTIONS § 8.4 (4th ed. 2002) ("the purpose of [Rule 23(c)(2) is to] allow[] parties to make conscious choices that affect their rights in a litigation context.").

[6]     "In determining the total amount of the common fund, it is proper to include agreed-upon fees and costs in addition to class damages." *Lucas*, 2006 WL 272960, at *3 n.1;  *see, e.g., Staton v. Boeing Co.,* 327 F.3d 938, 972 (9th Cir. 2003) (holding that "the parties may negotiate and agree to the value of a

the percentage of fund analysis.   *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir.

1995); *Gottlieb v. Barry*, 43 F.3d 474, 482-483 (10th Cir. 1993).   Class counsel, Bailey/Crowe &

Kugler, LLP and Maples Law Firm, have moved for  an attorneys' fee constituting thirty-three

and one third percent (33 1/3%) of the common fund, or three hundred thousand dollars

($300,000.00).[7]  MC2U and Unified do not object to a fee award of this amount.  In making the

determination of whether the requested fee is reasonable, the Court must consider the following

twelve (12) so-called  *Johnson*[8] factors:  (1) the time and labor required, (2) the novelty and

difficulty of  the questions presented by the case, (3) the skill requisite to perform the legal

service properly, (4) the preclusion of other employment by the attorneys due to acceptance of

the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations

imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9)

the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11)

the nature and length of the professional relationship with the client, and (12) awards in similar

cases.  *See, e.g., Rosenbaum*, 64 F.3d at 1445 n. 3; *Gottlieb*, 43 F.3d at 482 n.4.[9]

---

common fund (which will ordinarily include an amount representing an estimated hypothetical award of
statutory fees) and provide that, subsequently, class counsel will apply to the Court for an award from the
fund, using common fund fee principles" ); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th
Cir. 1996) ("The award to the class and the agreement on attorney fees represent a package deal. Even if
the fees  are  paid directly to the attorneys, those fees are still  best  viewed  as an aspect  of the class'
recovery.").

[7]    "The allocation of the fee award between the various firms  and attorneys who made up class
counsel is left to those parties."  *See In re Copley Pharm., Inc.*, 1 F. Supp. 2d 1407, 1416 (D. Wy. 1998).

[8]    *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

[9]    While the *Johnson* factors must be addressed, "rarely are all the  *Johnson* factors applicable; this
is particularly so in a common fund situation."  *Uselton  v.  Commercial Lovelace Motor Freight, Inc.*, 9
F.3d 849, 854 (10th Cir. 1993)(*quoting Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 4 56 (10th Cir.
1988)).

Class counsel have submitted evidence confirming hundreds of hours have been spent prosecuting this action, not only regarding certification and the merits, but also negotiating and bringing about this settlement.[10]  As for the novelty and difficulty of the questions presented, the Court yet again notes it has received and reviewed substantia l briefing on the legal and factual issues involved.  Not only do difficult issues involving Oklahoma law exist, including those involving complex equitable principles and Medicaid regulations, there are also difficult issues of federal Medicaid law that could be implicated.  Class counsel are qualified to handle these issues and, in the Court's view, have done a competent and thorough job of navigating their way through the different phases of this difficult litigation.  Further, given their experience and degree of com petence, it is not surprising class counsel, as their evidence indicates, have had other employment opportunities, som e hourly and others  contingent, and have foregone some of them in order to take on and handle Ms. Childs's case.

Class counsel have executed a contingent-fee agreement with Ms. Childs and have represented Ms. Childs in this matter on a contingent-fee basis.  The contingent-fee agreement allows class counsel to apply to the Court for a fee of up to forty percent (40%) of any common fund recovery.  Class counsel's application for a reduced thirty-three and one third percent (33 1/3%) fee here dem onstrates class counsel has the be st interests of the Settlement Class in mind.

---

[10]     Because the  other *Johnson* factors, combined, warrant approval of the common fund fee sought by class cou nsel, the Court need not engage in a detailed, lodestar-type analy sis of the "time and labor required" factor.  *See Brown*, 838 F.2d at 456 ("We hold here only that in awarding attorney s' fees in a common fund case, the 'time and labor involved' factor need not be evaluated using the lodestar formulation when, in the judgment of the trial court,  a reasonable fee is derived by  giving greater weight to other fact  ors, the basis of which is clearly  reflected in the record.").  Further, class counsel's willingness to prosecute this matter on a contingent basis, as discussed below, ordinarily shifts the analytical focus away from hours spent on the case to the ultimate result class counsel has obtained.  *See e.g. In re Harrah's Entm't*, 1998 WL 832574, at *5 (E.D. La. November 25, 1998)("To overly emphasize the am ount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorne ys' services.").  As the Court has noted, the result is a fair and reasonable one, even factoring in the subtraction of attorneys' fees from the common fund.

They are foregoing their contractual rights to ensure more money is available to provide a remedy to the Settlement Class. The requested one-third fee is not unusual. The Tenth Circuit has identified the typical fee range as 23.7% to 33.7%. *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 455 n.2 (10th Cir. 1988). And fees in the range of one-third of the common fund are frequently awarded in class action cases of this general variety. *See, e.g., Lucas v. Kmart Corp.*, 2006 WL 2729260, at *6 (D.Colo. July 27, 2006); *Cimarron Pipeline Const., Inc. v. Nat'l Council On Compensation Ins.*, 1993 WL 355466, at *2 (W.D.Okla. June 8, 1993)("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *see also* 4 N EWBERG ON CLASS ACTIONS § 14:6 (4th ed. 2002) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."). Finally, when recovery is "highly contingent" and it is determined counsel's efforts "were instrumental in realizing recovery on behalf of the class," the eighth "the amount involved and results obtained" factor can be accorded a greater weight. *See Brown*, 838 F.2d at 456; *Millsap v. McDonnell Douglas Corp.*, 2003 WL 21277124, at *6 (N.D. Okla. May 28, 2003). The Court reiterates that this matter involves different, complex subject matters. Given these complexities, its outcome is not a certainty, one way or the other. Class counsel have been instrumental in obtaining a fair, reasonable and adequate nine hundred thousand dollar ($900,000.00) common fund for the Settlement Class. The Court thus accords a greater weight to eighth "results obtained" factor.

Having considered each of the twelve *Johnson* factors – placing special emphasis on the eighth "results obtained" factor -- the Court preliminarily approves of class counsel's requested fee of three hundred thousand dollars ($300,000.00). The Court, however, will revisit the

appropriateness of the amount of attorney's fees in   light of the actual amount of claims paid at the final hearing.[11]

## VIII.

### Reimbursed Litigation Costs and Incentive Award to Ms. Childs

The "Prelim inary Settlement Agreement" reached between the parties permits class counsel to obtain reimbursement for up to fifteen thousand dollars   ($15,000.00) in litigation costs.  It also provides for an agreed-upon ten thousand dollar ($10,000.00) incentive award for Ms. Childs.   The agreement indicates Unified will separately pay these amounts.  However, because these amounts arguably sh ould be included in the class common fund,   *see* footnote 6, *supra*, the Court will determine whether they are appropriate in the context of this settlement.

First, the Court has reviewed class counsel's   requests for litigation costs reimbursement in the am ount of fifteen thousa nd oollars ($15,000.00).   These costs are appropriate, reasonable, and legally authorized especially in light of their substance, the status of the litigation, and nature and the size of the common fund c ounsel has obtai ned.  The Court prelim inarily approves of the requested costs reimbursement in the amount of fifteen thousand dollars ($15,000.00).

Next, as for the incentive award sought for Ms. Childs, "[a]n incentive award is meant to compensate the named plaintiff for any personal ri sk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit."   *Berrios v. Sprint Corp.*, 1998 WL 1749828, at *3 (E.D.N.Y. Sept ember 11,1998); *see also Roberts v. Texaco*, 979 F. Supp. 185, 187-88 (S.D.N.Y. 1997)(approving   incentive awards for a clas s plaintiff who "provided

---

[11] The Court notes that "the date upon which an order regarding the Fee Motion is entered" in the definition of **Preliminary Approval Date** will be the date  Court enters  its Final Ord er on the Fee Motion, after the final fairness hearing.

valuable assistance to counsel in prosecuting the litigation").  Based on the Court's review of the evidence presented and Ms. Childs's involvement in this litigation, as discussed in connection with Rule 23's adequacy-of-representation element, the Court finds the requested incentive award is appropriate.  It is all the more appropriate given the structure of the proposed settlement, as the incentive award " will not diminish any of the other benefits provided to any Class Member."    *Desantis v. Snap-On Tools Co., LLC*, 2006 W L 3068584, at *3 (D.N.J. October 27, 2006).

The Court preliminarily approves of the requested ten thousand dollar ($10,000.00) incentive award to Ms. Childs.

## IX.

### Conclusion and Order

**THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED:**

1.  The Court has jurisdiction over the subject matter of this litigation;

2.  Based on the class certification briefing and evidence, and as requested in the Joint Motion, that all elements of Rule 23(a) and 23(b)(3) are satisfied, and that this matter preliminarily be certified as a class action as to the individuals comprising the Settlement Class only, and for settlement purposes only.  Further, that Ms. Carla Childs is appointed Settlement Class representative, and must perform all duties and obligations such an appointment entails;

3.  Based on the class certification briefing and evidence, the Joint Motion, and the evidence attached thereto, that the proposed settlement is fair, reasonable and adequate to the Settlement Class and is preliminarily approved in all respects;

4.   Based on the class certification briefing and evidence, the Joint Motion, and the evidence attached thereto, that the proposed amended  mail notice to be sent to the Settlement Class, and the proposed amended publication notice, comport fully with both Rule 23 and due process, is the best notice that is practicable, and is approved.  Further, that all parties and the claims administrator shall comply with the notice plan set forth in the "Settlement Agreement" and the amendments (Dkt. #133) in mailing out notice, and in processing the claims forms sent in by participating members of the Settlement Class.  Finally, that MC2U and Unified be required to file with the Court proof of the due mailing of notice and proof of publication of notice no later than three (3)  days before the scheduled fairness hearing, and deliver copies of same to Settlement Class counsel;

5.   That David W . Crowe, J ohn W . Arnold and L. Ray Ma  ples, II (of Bailey/Crowe & Kugler, LLP and Maples Law Firm ) are appointed Settlement Cla ss counsel, and shall fulfill all duties and obligations such an appointment entails.  Further, having considered each of the twelve   *Johnson* factors in relation to their requested fee and the evidence presented, that class counsel's requested fee of three hundred thousand dollars ($300,000.00) is preliminarily approved;

6.   That class counsel's requested litigation expense reimbursement of fifteen thousand dollars ($15,000.00) and the requested incentive award to Ms. Childs of ten thousand dollars ($10,000.00) are preliminarily approved;

7.   That MC2U and Unified shall make any and  all p ayments requ ired by  the  "Settle me nt Agreement", on the dates, at the times, and in  the manner prescribed by that agreement, as amended, and that, in general, all parties and their counsel are to abide by and perform as per the terms and obligations of the "Preliminary Settlement Agreement," as amended;

8. That a Settlement Fairness Hearing shall be conducted before the Court on the 31st day of January, 2012 at 10:00 a.m. Fair and adequate notice of this hearing shall be included in the notice materials mailed and published to the Settlement Class, as described and addressed herein. At this hearing, the Court shall consider the following topics:

   a. Whether to finally certify this matter as a settlement class, whether to finally approve the class settlement, whether to finally approve class counsel's request for fees and expense reimbursement, and whether to finally approve of Ms. Childs's incentive award;

   b. Any proper and timely objections to the class settlement, the preliminary attorneys' fee award, or the expense reimbursement and Ms. Childs's incentive award;

   c. Any other matters properly bought before the Court concerning this action and the proposed settlement;

9. That any person who wishes to appear at the Settlement Fairness Hearing through separate counsel and/or to challenge the fairness, reasonableness and adequacy of the class settlement, or any aspect thereof, shall fully and timely comply with any and all pre-hearing filing, form, procedure and deadline requirements set forth in the notice the Court has ordered to be mailed and published. Any objector who fails to strictly adhere to these shall not be permitted to raise or pursue an objection at the Settlement Fairness Hearing, and such failure shall constitute a waiver of any objection to the class settlement, the preliminary attorneys' fee award, the expense reimbursement, Ms. Childs's incentive award, and related matters.

10. That Class Counsel shall provide counsel for MC2U and Unified copies of any requests for exclusion received by Class counsel within five (5) business days of Class Counsel's receipt of any such requests, and shall inform counsel for MC2U and Unified of the percentage of the Settlement Class in which such Requestors opted out within seven (7) days of the Settlement Fairness hearing, to the extent Class Counsel are able to do so based on the information provided by MC2U and Unified, and assuming the requests for exclusion are timely received and accurately completed. To the extent late requests for exclusion are received or further investigation must be performed to determine this, class counsel shall supplement such information to counsel for MC2U and Unified as soon as reasonably practicable, and prior to the Settlement Fairness hearing, if possible.

11. That this order is a non-final, non-appealable preliminary order. After the Settlement Fairness Hearing is conducted, and objections, if any, to the proposed settlement and related matters are evaluated and analyzed, the Court may alter, modify, amend, supplement or vacate the contents of this order as it deems necessary or appropriate. Or, the Court may adopt the contents of this order, with modest or material changes, in issuing a final order approving this settlement.

DATED, this 2nd day of December, 2011.


Paul J. Cleary
United States Magistrate Judge