IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Carla Childs, as Special Administrator of the Estate of Ethel Kirk, and on behalf of Herself and Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> Unified Life Insurance Company, and MobileCare 2U, LLC <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  Case No.  10-CV-23-PJC |

**ORDER AND FINAL JUDGMENT GRANTING:**
**FINAL APPROVAL OF SETTLEMENT CLASS CERTIFICATION,**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT,**
**APPROVAL OF CLASS COUNSEL'S ATTORNEY FEES AND EXPENSES,**
<u>**AND APPROVAL OF CLASS REPRESENTATIVE'S INCENTIVE AWARD**</u>

Before the Court are the Parties' Joint Motion for Final Class Certification and Approval of Settlement Based on Second Amendment to Settlement Agreement ("Joint Motion") [Dkt. No. 157] and Plaintiff Carla Childs's First Amended Unopposed Motion for Attorney Fees, Reimbursed Costs and for Incentive Award ("Unopposed Motion") [Dkt. No. 150]. There have been no objections to either of these motions and no objections voiced to the proposed Class Settlement. For the reasons set forth below, the Joint Motion and the Unopposed Motion are **GRANTED.** A separate Judgment is entered contemporaneously herewith.

**I.**
**BACKGROUND/PRELIMINARY APPROVAL**

On December 2, 2011, the Court issued an opinion and order in the above-captioned matter preliminarily granting settlement class certification; preliminarily approving of a proposed settlement of this matter; and preliminarily approving of class counsel's requested attorneys' fees

and reimbursed costs, and of an incentive award for Plaintiff Carla Childs ("Ms. Childs"). [*See* Dkt. No.134]. The settlement class preliminarily certified by the Court consisted of the following individuals:

> Any and all individuals who are citizens or residents of Oklahoma, who:
>
> i) are residing or that have resided in Oklahoma nursing facilities;
>
> ii) are receiving or that have received Medicaid assistance, via SoonerCare or otherwise, from the State of Oklahoma;
>
> iii) are eligible, or that have been eligible, to receive denture-related services under O.A.C. §317:30-5-133.1(b)(17); and
>
> iv) have purchased and out of their own funds, pay or have paid, monthly premiums for the Dental Plan as defined in the Settlement Agreement.

Excluded from the Class were the following individuals, or categories of individuals:

> a. Individuals or entities, if any, who timely opt out of this proceeding using the correct protocol for opting out that will be formally established by the Court;
>
> b. Any and all federal, state, or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;
>
> c. Any currently sitting Oklahoma state or federal court judge or justice in the current style and/or any persons within the third degree of consanguinity to such judge or justice;
>
> d. Any person who has given notice to either Defendant, by service of litigation papers or otherwise, and alleged he or she has suffered personal physical injury by virtue of the acts or omissions alleged herein;
>
> e. Individuals, if any, that have previously (ie. on any date before this action is filed) demanded from either Defendant, by service of litigation papers or otherwise, a return of all or part of the premium monies principally sought as damages or relief herein, and received such monies, from either Defendant, or from anyone or any entity acting on their behalf.

(the "Settlement Class"). The names of and contact information for the individual Settlement Class members, 1,798 in number, were obtained from a database maintained by Defendant Unified Life Insurance Company. The Court, in particular, preliminarily determined the

Settlement Class satisfied all requirements of Fed. R. Civ. P. 23(a), and that Rule 23(b)(3)'s elements of predominance and superiority were met.

As for the proposed class action settlement itself, the Court described and considered the settlement and, exercising its discretion to do so, preliminarily found it to be fair, adequate and reasonable, and to satisfy each of the Tenth Circuit's four settlement-approval factors. *See e.g. Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). The Court also determined the form and method of distribution of certification/settlement-class notice to be appropriate and to satisfy both the notice standards in Fed. R. Civ. P. 23 and constitutional due process.

Finally, the Court preliminarily found the thirty-three-and-one-third percent (33 1/3%) common-fund attorneys' fee of three hundred thousand dollars ($300,000.00) to be appropriate. It did so in light of the twelve so-called *Johnson* factors, *see e.g. Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995) (*citing Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)), but reserved the right to revisit the fee award in light of the actual number of claims paid in the settlement. The Court further determined class counsel's reimbursed expenses of fifteen thousand dollars ($15,000.00) was appropriate, as was a class-representative incentive award of ten thousand dollars ($10,000.00) to Ms. Childs.

Thereafter, the Court conducted three Fairness Hearings regarding the terms of the Settlement Agreement. At the first such hearing on January 31, 2012, the Court expressed its concerns over certain settlement provisions and suggested that the parties reconsider the settlement terms. A subsequent Order [Dkt. No. 141] summarized discussion at the first fairness hearing. Thereafter, the parties amended the Settlement Agreement to reduce the attorney fee award from one-third to one-fourth of the settlement fund, establish a *cy pres* fund for the benefit

3

of senior citizens, and increased payment to the Class claimants from 50 cents on the dollar to full reimbursement. [Dkt. No. 151].

On March 27, 2012, a second fairness hearing was held. The Court approved the Amended Settlement Agreement, but expressed concern over the method of Notice provided to potential class members residing in nursing homes or similar facilities and to the heirs or representatives of deceased class members. In response, the parties formulated a plan of Notice that would allay the Court's concerns in this regard. This involved hand-delivery of Notices to some 16 large nursing facilities (housing 10 or more class members) from which no claims or responses of any kind had previously been received, using electronic databases in an effort to find better mailing addresses for class members or their heirs and publishing Notice in the State's two largest metropolitan newspapers as well as several smaller newspapers.

The result of this work is that where initially there had been 78 valid claims valued at $29,350, the final tally is some 213 claims valued at more than $200,000. In addition a *cy pres* fund of $31,163 has been established to fund the Salvation Army's Bartlesville Sonshine senior program. This results in a payout to class members/beneficiaries of approximately 26 percent of the settlement fund, not including attorney fees, reimbursed expenses and incentive award. Considering these additional expenditures, payout for the benefit of the class exceeds 50 percent of the settlement fund.

## II.
### FACTORS INFLUENCING FINAL APPROVAL OF SETTLEMENT, FEES, EXPENSES AND INCENTIVE AWARD

**A. January 31, 2012 Settlement Fairness Hearing**

The Court set this matter for a Settlement Fairness Hearing on January 31, 2012 at 10:00 a.m. At this hearing, the Court received evidence regarding the dissemination of the mailed and

publication notice by the claims administrator, Dahl, Inc. The Court learned that both mailed and published notice were timely performed, but that undeliverable addresses existed for two hundred twenty-one (221) class members. For these class members Dahl, Inc. obtained new addresses via a specialized firm, and re-mailed the mailed notice to them on January 24, 2012. As of January 31, 2012, a total of one hundred twenty-two (122) class-member claims had been received by Dahl, Inc. Six opt outs were submitted: Bill Atkins, Billy Strain, Harriet Baker, Charlene McCullar, Phyllis Drake POA for Marie Keen, and Mary Evans for Estate of Flora Nevin. The contact information for these individuals is maintained by Dahl, Inc., the Claims Administrator.[1] No objections were received.

All class members submitting claims, under the terms of the current Settlement Agreement, were to be paid twenty-one dollars and thirty-three cents ($21.33) for each month they purchased the dental plan in issue. The evidence adduced revealed that as of January 31, 2012, out of the nine hundred thousand dollar ($900,000.00) common fund, $42,254 in claims would be paid to class members. At the hearing the Court perceived this to be a low claims rate and that, in light of the "clear sailing provision" and reverter clauses in the Settlement Agreement (whereby Defendants agreed not to object to the 33 1/3% common fund attorney fee, and all unclaimed settlement funds are paid back to Defendant Unified Life), questioned whether the class-action settlement embodied in the Settlement Agreement ought to be approved. The

---

[1]    The Court accepts these six (6) opt outs, as none of them submitted a Reimbursement Claim Form after having received notice of the amended settlement terms, as set forth in the First Written Amendment to Settlement Agreement, and as mandated in the Court-Required Amended Plan of Notice. The Court also accepts the four (4) additional opt outs received following the Court-Required Amended Plan of Notice: Wilda Jane Spillers (representative of Grover Cleveland Spillers, Jr.), Harold Douglas (representing Winneford Douglas), Delores Webster (representing Ida Mae Dooley), and Doris McKiddie (representing Delmar McKiddie). Neither these individuals nor their estates, if applicable, shall be considered members of the Settlement Class or bound by the settlement finally approved herein, or by this Order and Final Judgment.

Court ultimately adjourned the Settlement Fairness Hearing without finally approving the settlement.

### B. Court's February 1, 2012 Order

On February 2, 2012 the Court entered an order addressing what occurred at the January 31, 2012 Settlement Fairness hearing. [Dkt. No. 141]. In that Order, the Court reiterated its concern, particularly regarding the Settlement Agreement's reverter clause. The Court perceived the settlement's provision for the twenty-one dollars and thirty-three cents ($21.33) monthly reimbursement to be a mere "*partial* payment of claims under the settlement." *Id*. (emphasis in original). The Court's concern with this payment amount was influenced, in part, by a Wisconsin federal district court's opinion in *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806 (E.D. Wisc. 2009).

*McKinnie* involved a class action addressing improper ATM fees charged to non-Chase customers. The *McKinnie* settlement involved a maximum common fund of $2.1 million. Because the *McKinnie* class members could not be identified by name and address, only publication and internet notice were utilized; there was no mailed notice. The notice in *McKinnie* yielded 1,188 claimants, with a pay out to them of only $187,000 (an 8.9% claims rate).

The *McKinnie* settlement, as does the settlement agreement here, contained both a clear sailing provision and a reverter clause. The court in *McKinnie* addressed these provisions, noting they can warrant close scrutiny, but that reverter clauses are acceptable "when class members receive full recovery for their damages and the parties agree to the reversion." *Id.* at 812 (*citing Mangone v. First USA Bank*, 206 F.R.D. 222, 230 (S.D. Ill. 2001)). In *McKinnie*, the Wisconsin district court was not troubled by the clear sailing provision and reverter clause, determined

6

those provisions were not borne of collusion, and that the settlement was neither unfair nor improper. In so doing, the court noted class counsel was reducing its fee from a 33% common fund award to a 29.8% common fund award and that "[t]he claimants will receive full damages and Chase will pay more than $310,000 to a *cy pres* charity." *Id.* at 813.

Again, the settlement agreement here contains both a reverter clause and a clear sailing provision. The parties justified these provisions at the January 31, 2012 Settlement Fairness Hearing, at least in part, by maintaining that all class members submitting claims are made completely whole with the twenty-one dollars and thirty-three cents ($21.33) monthly reimbursement, since most class members actually received non-denture dental services of some value. They maintained the average monthly premium paid by class members was approximately fifty dollars ($50.00), and that the near-half $21.33 premium reimbursement amount was adequate to make them whole. They also justified the $21.33 reimbursement amount by reminding the Court that a portion of the settlement here involved injunctive relief, which has value.

While the Court did not outright reject the parties' position about the $21.33 premium reimbursement, it nonetheless felt more could be done for the class's recovery, especially since many class members, due to their elderly and living-situation attributes, may not have received the mailed or published notice, or knew what to do with it once received. In addition, unlike in *McKinnie,* Plaintiff and class counsel had not reduced the requested attorney fee from what is provided for in the settlement agreement, and there was no provision for any *cy pres* charitable contribution in this case. The Court also had some lingering concerns with the requested 33 1/3% common fund fee of $300,000, given a lodestar cross-check revealed Class Counsel only to have spent approximately $199,500 in actual time in this case, and the fact the claims payout

amount was seemingly low, at roughly 4.69% of the common fund (compared to 23.7% in *McKinnie*, a number which included the $350,000 *cy pres* contribution).

For all of these reasons, the Court, in its February 2, 2012 Order, declined to finally approve the settlement, but permitted the parties to "reconsider the settlement terms." [Dkt. No. 141].

### C. Amended Settlement Terms and March 27, 2012 Fairness Hearing

The parties submitted to the Court their "First Written Amendment to Settlement Agreement."[2] [Dkt. No. 151]. They believe this amended agreement allays the Court's concerns principally arising from *McKinnie* and as expressed in the February 2, 2012 Order. On March 27, 2012 the Court held an additional fairness hearing to receive argument and evidence from the parties as to why the amended settlement should be approved. The Court will first briefly summarize the salient amended provisions, and then discuss its overall view of the settlement as now configured.

---

[2] By way of a May 21, 2012 Opinion and Order, Dkt. No. 154, the Court, in the wake of the March 27, 2012 fairness hearing, expressed disapproval of the manner in which notice of settlement was provided to certain class members. In response, Ms. Childs and Defendants submitted a "Second Written Amendment to Settlement Agreement" containing a Court-Required Amended Plan of Notice. Dkt. No. 157. At a June 19, 2012 hearing, the Court determined this amended notice plan satisfied its concerns expressed in the May 21 Opinion and Order and issued an order to that effect. Dkt. No. 159. The Court is now satisfied that this amended notice plan has been fully and properly executed by the parties, and no longer takes any issue with how class notice has been disseminated in this case. No objections were received in response to the Second Written Amendment to Settlement Agreement. Thus, implicit in the Court's discussion and final approval of the Parties' First Written Amendment to Settlement Agreement herein is the final approval of their Second Written Amendment to Settlement Agreement as well.

8

D. **Summary of the Amended Settlement Terms, and the Court's Assessment of Settlement Fairness**

In the First Written Amendment to Settlement Agreement, the parties first agree to forego the twenty-one dollar and thirty-three cent ($21.33) monthly reimbursement and now pay each class member the sum of fifty dollars and seventy-four cents ($50.74) in monthly reimbursement. This amount represents the full, average monthly premium paid by class members for the dental plan in issue, taking into account during the five years the dental plan was sold, its premium increased from $40.00, to $54.00, and then to $60.00. To support the $50.74 figure, the parties submitted a sworn declaration from Unified Life's President, Mr. John Tiller. Mr. Tiller's declaration contains a calculation supporting this amount. [Dkt. No. 151-1]. The Court accepts Mr. Tiller's declaration testimony and finds his average monthly premium number to be accurate.

Second, as per additional sworn affidavit evidence submitted by Jeffrey Dahl, of claims administrator Dahl, Inc., there are, as of August 10, 2012, 209 class members who have submitted valid Reimbursement Claim Forms. [Dkt. No. 162]. Using the amended $50.74 monthly reimbursement and a total of 3,866 premium months attributable to the 209 claimants, the total payout to claimants will now be $196,160.84. [Dkt. No. 162-5]. This revised payout amount yields an average claim payment of $938.57, and represents a total payout of 21.79% of the $900,000.00 common fund established in the settlement agreement. The Court accepts Mr. Dahl's declaration testimony supporting this calculation.

Third, *cy pres* is an equitable doctrine that has been imported into the class-action context from the field of trust law:

> The *cy pres* doctrine takes its name from the Norman French expression, *cy pres comme possible*, which means "as near as possible." The doctrine originated to save testamentary charitable gifts that would otherwise fail. Under *cy pres*, if the

9

> testator had a general charitable intent, the court will look for an alternate recipient that will best serve the gift's original purpose. In the class action context, it may be appropriate for a court to use *cy pres* principles to distribute unclaimed funds. In such a case, the unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated.

*In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682 (8th Cir. 2002) (internal citations and quotation marks omitted). In the class-action context, a *cy pres* distribution is designed to be a way for a court to put any unclaimed settlement funds to their "'next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class.'" *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) (*quoting* 3 William B. Rubenstein et al., Newberg on Class Actions § 10.17 (4th ed. 2002) (emphasis omitted)).

The parties, in the First Written Amendment to Settlement Agreement, have now agreed to make a *cy pres* charitable contribution to The Salvation Army-Bartlesville Corps., who will then use it to facilitate its Sonshine Seniors program. [Dkt. No. 151]. The Sonshine Seniors program, as per the declaration of the Salvation Army's Major Alan Phillips, provides clothing, food, gifts and outings to Oklahoma senior citizens of limited financial means. [Dkt. No. 151-7]. The Sonshine Seniors program, until recently, was funded by a local donor. That local donor recently passed away, thus causing a void in funding for the program. The *cy pres* contribution will be in the amount of thirty-one thousand one hundred sixty-three dollars and fifty cents ($31,163.50). Major Phillips indicates this amount will fund the Sonshine Seniors program for approximately two (2) years. *Id.*

Based on these facts, the Court is satisfied that the contribution to the Salvation Army's Sonshine Seniors program is for the laudable purpose of helping elderly Oklahomans, which is also the overarching purpose of the captioned class action. Further, after factoring in this *cy pres* contribution, it becomes apparent the total distribution of the $900,000 common fund (excluding

attorneys' fees) is now $227,324.34, or 25.26% of the common fund. This percentage exceeds the 23.7% common-fund distribution in *McKinnie*, and is acceptable.

Fourth, the First Written Amendment to Settlement Agreement [Dkt. No. 151] and Plaintiff Childs's First Amended Unopposed Motion For Attorneys' Fees, Reimbursed Costs and for Incentive Award [Dkt. No. 150] reveal Plaintiff and class counsel reduced their fee request from thirty- three and one third percent (33 1/3%) of the $900,000 common fund, to twenty-five (25%) of it. Put in dollar terms, the reduction is from $300,000 to $225,000. The Court notes this reduction now yields a percentage fee for class counsel here that is actually smaller than what was awarded in *McKinnie* (25% vs. 29.8% in *McKinnie*). In addition, given the value of class counsel's actual time of $199,500 in the case, a fee award of $225,000 yields a mere 1.18 times lodestar multiplier.[3] Based on precedent the Court previously cited in preliminarily approving this settlement, there is little doubt a mere 1.18 fee multiplier is not excessive or undeserved. And, in any event, the Court considers the lodestar factor merely in conjunction with the other *Johnson* attorney fee factors, and places primary emphasis on the 25% common fund fee application, the preferred fee-calculation method in the Tenth Circuit. A 25% common fund fee is reasonable and proper in these circumstances, and is finally approved.

On the whole, these four revisions to the settlement agreement do address the Court's concerns articulated at the January 31, 2012 Settlement Fairness hearing and which are contained in its February 2, 2012 Order. Moreover, there are two additional reasons -- derived principally

---

[3] The Court notes class counsel's actual time of one hundred ninety nine thousand five hundred dollars ($199,500.00) does not include time spent in recent weeks working on the revisions to the settlement agreement discussed herein, including the revisions related to notice set forth in the Second Written Amendment to Settlement Agreement. Factoring in an estimate of that time, the Court believes class counsel's actual time approaches and likely exceeds two hundred twenty five thousand dollars ($225,000.00), the fee award that is approved. Further, it is not insignificant that class counsel's fee award, based on Mr. Tiller's affidavit, is actually slightly lower than the aggregate billed by counsel for Unified in this matter.

11

from a comparison to *McKinnie* -- which make the Court inclined to finally approve of this settlement.

First, the value of this settlement cannot be measured by purely a monetary standard. As part of the settlement, the class is receiving prospective injunctive relief in the form of the defendants no longer being permitted to sell the dental plan in issue in Oklahoma. No such injunctive relief was included in the *McKinnie* settlement. Courts are ordinarily required to place value on injunctive relief awarded to a class in evaluating the overall fairness of a settlement, including its attorneys' fee component. *Meyenburg v. Exxon Mobil Corp.*, No. 3:05-cv-15, 2006 U.S. Dist. LEXIS 97057 at *10 (S.D. Ill. June 5, 2006) ("The Court should also consider any prospective injunctive relief in addition to any tangible benefits (such as cash or coupons) conveyed to the class."); *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1342-43 (S.D. Fla. 2007) ("Moreover, when determining the total value of a class action settlement for purposes of calculating the attorneys' fee award, courts usually consider not only the compensatory relief, but also the economic value of any prospective injunctive relief obtained for the class.") (collecting cases).

As per the March 13, 2012, declaration of John Tiller, sales of the dental plan in issue began in April 2004 and were sold until March 2009. [Dkt. No. 151-1]. There was a total of $1,427,142.46 in premium collected from the dental plan's sales during the five (5) years it was sold. *Id.* Assuming without deciding the collection of this premium, or some portion of it, was wrongful, the value to the class of ensuring the plan is no longer sold in Oklahoma is real and exists. While there has been no evidence or testimony, expert or otherwise, to place a value on this injunctive relief, it has real value and in the Court's view can conservatively be estimated to be at least two hundred thousand dollars ($200,000.00).

Second, while the composition of the class – elderly Oklahomans living in nursing facilities -- has presented some difficulties in terms of notice, it is significant that, unlike in *McKinnie*, class members here are identifiable by name and last known address. Dahl, Inc. has submitted detailed reports revealing the names and addresses of class members, and other information concerning the location to which the mailed notice was sent. Class members have actually been transmitted the mailed notice, and the mailed notice has been supplemented by publication notice, most recently in late June 2012, mainly targeting locales in Eastern Oklahoma. Further, if certain mailed items were returned undeliverable, or the response rate for certain homes was exceedingly low, the parties, at the Court's request, took additional measures to ensure proper deliveries. These measures included hand deliveries of notice packets to previously unresponsive homes and the use of electronic database searches to obtain potentially valid addresses for relatives of deceased class members. Those individuals who received notice due to a need for alternative addresses were given until March 9, 2012 and, in certain cases, until August 13, 2012 to submit claims.

While the notice here has not been perfect, the governing rules do not require perfection. *Ashley v. Reg'l Transp. Dist.*, No. 05-cv-01567, 2008 U.S. Dist. LEXIS 13069 at *13 (D. Colo. Feb. 11, 2008) ("According to the case law established by the federal courts, the law requires 'adequate notice, not perfect notice.'"). Consequently, the Court believes, as it previously determined at the preliminary approval stage, that the notice here complies with Rule 23 and with due process. This notice is also better than what was provided in *McKinnie*. For this reason, the potential need for a *cy pres* charitable contribution by the parties is not as significant as it was in *McKinnie*. The fact the parties have nonetheless decided to make such a contribution

only reinforces the Court's view that the settlement here is appropriate and should be finally approved.

### F. Notice to Class Members of Amended Settlement Terms

The Court has also considered whether the class is entitled to additional notice of the amended settlement terms set forth in the First Written Amendment to Settlement Agreement. The amendments contained in this document only *enhance* the value of the settlement to class members. Class members will now receive a sum representing the full amount of dental plan premium paid, and Plaintiff and her counsel have elected to take a reduced common-fund fee. Due to these enhancements, and because the amendments do not foist any unfavorable new terms upon class members, the parties will not be required to re-notice class members as to the contents of the First Written Amendment to Settlement Agreement. *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1111 (10th Cir. 2001) (district court did not abuse its discretion by failing to notify class members of a new right to opt out because the right to opt out "merely expanded the rights of class members" and did not create "a risk that unfavorable terms would be forced upon some class members"); *Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944, at *13 (M.D. Tenn. Aug. 11, 1999) (notice of settlement amendments was unnecessary because the amendments enhanced the relief provided to the class members and the original notice satisfied constitutional standards); *see In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 58 (D. Mass. 2005); *Nilsen v. York County*, 382 F. Supp. 2d 206, 221 (D. Me. 2005).

However, because of the enhancements brought about by the First Written Amendment to Settlement Agreement, the parties believed it was possible one or more of the six opt outs may now want to participate in the settlement. The Parties' Court-Required Amended Plan of Notice discussed in footnote 2, *supra*, contained a term providing for these individuals to be re-noticed.

The Court is satisfied that this has adequately provided notice to the six opt outs, despite the fact none of the original six opt outs have decided to accept the settlement benefits.

## III.
## ORDER AND FINAL JUDGMENT

Having conducted the January 31, 2012 fairness hearing, the March 27, 2012 fairness hearing, and the August 15, 2012, fairness hearing as per the Court-Required Amended Plan of Notice, and having considered the arguments, authorities, and evidence submitted by the parties both in their briefing and at those hearings, the Court determines this matter is suitable for final approval in all respects.

The Court's Opinion and Order of Dec. 2, 2011, sets forth the analysis and reasoning for the Court's preliminary Class Approval. [Dkt. No. 134]. That analysis is adopted *in toto* and incorporated herein. The Court finds that the Class meets all requirements of Fed. R. Civ. P. 23(a) and 23(b). *See* Dkt. No. 134 at 9-17.

The Court has conducted three fairness hearings in this matter and closely scrutinized the terms of the settlement. The parties have worked hard to respond to the Court's concerns and have fully satisfied the Court as to the fairness of the settlement and the Notice provided to potential class members, their heirs or representatives. The Court has considered the factors set forth in *Rutter*, 314 F.3d at 1188 (10th Cir. 2002) and finds that the settlement herein is fair, reasonable and adequate.

The Court further finds that Notice has been provided to class members in a reasonable manner.

The Court finds that the attorney fee award of $225,000.00 is reasonable given the outcome of this case, the complex subject matter involved, the results obtained for class members, the percentage fee and a lodestar comparison. The Court notes that in addition to the

15

financial reimbursement secured for Class members, this action has also resulted in injunctive relief whose specific value is difficult to quantify, but which the Court recognizes as significant.

The Court finds reimbursement of class counsel's expenses is reasonable and the incentive award for Ms. Childs' effort is also reasonable and proper.

**ACCORDINGLY**, the Court, with this order and final judgment, makes **FINAL** all preliminary findings and conclusions contained in its December 2, 2011 Opinion and Order, including jurisdictional findings and findings relating in any respect to certification of the Settlement Class, except those findings and conclusions related to matters involving any amendment to the parties' Original Settlement Agreement, which are contained in the First Written Amendment to Settlement Agreement and in the Second Written Amendment to Settlement Agreement. The Court's findings and conclusions regarding the parties' amendments to the Original Settlement Agreement, contained in the First Written Amendment to Settlement Agreement and Second Written Amendment to Settlement Agreement, are set forth in this Order and Final Judgment, and are also made **FINAL**. The finality of the Court's findings and conclusions includes and extends to, without limitation, its approval of the settlement binding the Settlement Class (but excluding the ten (10) opting out individuals, or their estates; and approval of the award of attorneys' fees, expenses and incentive award to Ms. Childs and/or Class Counsel.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED**, that Ms. Childs and all members of the Settlement Class (save for any opt outs who do not submit a Reimbursement Claim Form, *see* footnote 1, *supra*) and/or their estates, heirs, assigns, executors or personal representatives ("Participating Class Members"), are bound by the terms, conditions, and/or obligations, including the release obligations, of the Original Settlement Agreement on file and

attached as Exhibit "1" to Docket Entry No. 121; to the First Written Amendment to Settlement Agreement on file and attached as Exhibit 1 to Docket Entry No. 151; and to the Second Written Amendment to Settlement Agreement on file and attached as Exhibit 1 to Docket Entry No. 157 (collectively "the Settlement Agreement"). The Settlement Agreement is finally approved in all respects. The claims of the Participating Class Members subject to the terms, conditions, and/or obligations of the Settlement Agreement are the "Settled Claims" as defined in the Original Settlement Agreement, Section 1.38.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Settled Claims of the Participating Class Members shall be and hereby are **DISMISSED WITH PREJUDICE TO ANY RE-FILING**. Except as explicitly set forth in the Settlement Agreement, all costs, expenses and attorneys' fees shall be borne by the party or parties incurring same.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that all parties must continue to comply with the terms, conditions, and/or obligations of the Settlement Agreement, especially, but not limited to, those regarding timely payment of claims properly submitted by Participating Class Members, timely payment of class counsel's attorneys' fee of two hundred twenty-five thousand dollars ($225,000), timely payment of reimbursed expenses, timely payment of Ms. Childs's incentive award, and timely payment to The Salvation Army-Bartlesville Corps. of the *cy pres* charitable contribution.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED**, that the Court, notwithstanding the final nature of this order and judgment, shall retain jurisdiction to order injunctive relief to enforce, implement, administer, construe or interpret the Settlement Agreement, and this order and judgment. In particular, the Court will retain jurisdiction to enforce, if necessary, Original Settlement Agreement Section 2.11, which concerns the

commitment of defendants to continue to not sell the Dental Plan in Oklahoma. All relief not expressly granted in this order and judgment is hereby denied.

**IT IS SO ORDERED AND ADJUDGED**, this 21st day of August 2012.

_____
Paul J. Cleary
United States Magistrate Judge